(No. 39956.—

MARLENE H. MARTINO, Admx. *et al.*, *vs.* NED THOMAS BARRA *et al.*, Appellees—(CITIES SERVICE OIL COMPANY, Appellant.)

*Opinion filed June 22, 1967.—Rehearing denied Sept. 27, 1967.*

Kirkland, Ellis, Hodson, Chaffetz & Masters, of Chicago, (Charles M. Rush and John M. O'Connor, Jr., of counsel,) for appellant Cities Service Oil Company.

Hinshaw, Culbertson, Moelmann & Hoban, of Chicago, (John M. Moelmann and D. Kendall Griffith, of counsel,) for appellee Ned Thomas Barra.

Patrick J. Muldowney, of Chicago, for appellee Mt. Vernon Tire Service Corporation.

James A. Dooley, of Chicago, for plaintiffs as *amici curiae* supporting petition for leave to appeal.

Nat P. Ozman, for *amicus curiae* Anton Hamel.

Mr. Justice Ward delivered the opinion of the court:

We allowed a petition for leave to appeal by Cities Service Oil Company from a judgment of the First District Appellate Court, which reversed in part a judgment of the circuit court of Cook County, dismissed the appeal as to certain parties, and remanded the cause. (*Martino* v. *Barra,* 67 Ill. App. 2d 328). We restate here that court's history of the litigation and factual summary:

"This action was brought to recover damages for the wrongful deaths of Herbert Hazen, Jr., Josephine Hazen and Charlotte Thacker, resulting from an automobile-truck collision near Mt. Vernon, Illinois. [Marlene H. Martino was administratrix for the Hazens, and Iola Saunders was administratrix for Thacker.]

"Named as defendants were Leon B. Stilley and the Leon B. Stilley Construction Company, owners of a concrete mixer truck; Ned Thomas Barra, driver of the mixer truck; Cities Service Oil Company, owner of a tractor-trailer; Anton Halmel, driver of the tractor-trailer; Mt. Vernon Tire Service Corporation; and Stanley V. Koziara, owner of the Mt. Vernon Tire Service Corporation.

Defendants Halmel and Cities Service Oil Company cross-claimed against the other defendants for personal injuries to Halmel and for property damage to the Cities Service tractor-trailer. The jury returned a verdict for all the defendants and against the plaintiffs, and judgment was entered thereon. No verdict was specifically rendered on the cross-claims of Halmel and Cities Service.

"Post-trial motions were filed by the plaintiffs for judgment notwithstanding the verdict and for a new trial on the question of damages. Cross-claimants Halmel and Cities Service filed post-trial motions, Halmel requesting a directed verdict on his cross-claim and a new trial on the question of damages, and Cities Service requesting judgment in its favor on its cross-claim in the amount of $3,000, which amount was agreed by all the parties to be the amount of damages to the tractor-trailer. Cross-defendant Mt. Vernon Tire filed a post-trial motion for judgment in its favor and against plaintiffs and cross-claimants, consistent with the jury's verdict. Cross-defendants Barra and Stilley likewise filed motions for judgment in their favor and against plaintiffs and cross-claimants.

"Plaintiffs' motion was sustained as to defendants Barra and Mt. Vernon, and a new trial on the question of damages was granted; the motion was denied as to the other defendants. Cross-claimant Halmel's motion was sustained as to Barra and Mt. Vernon, and a new trial on the question of damages was granted. Cross-claimant Cities Service's motion was sustained as to Barra and Mt. Vernon, and judgment entered in the amount of $3,000. It is from these judgments that Ned Thomas Barra and Mt. Vernon Tire Service Corporation bring this appeal. [The appeal to the appellate court.]

"Route 37 is a two-lane highway running north and south through Mt. Vernon, Illinois. The accident involved here occurred about 2:00 P.M. on August 26, 1958, some one and one-half miles to the north of the city. The Cities

Service tractor-trailer, driven by Anton Halmel, was proceeding northerly on Route 37, followed some 500 feet behind by an automobile driven by Phillip Lenseler. Proceeding in a southerly direction and to the north of the tractor-trailer was the Stilley Construction concrete mixer truck driven by Ned Thomas Barra, followed by the automobile in which the decedents were riding, an undetermined distance behind the mixer truck. It was undisputed that all the vehicles were in their proper lanes and traveling within the posted speed limit, and that the day was sunny and the road surface in good physical condition. As the concrete mixer truck and the tractor-trailer got to within 60 feet of each other, the two left rear dual wheels of the mixer truck rolled off the axle and continued to roll in a southerly direction down the highway. The left rear side of the mixer truck fell to the pavement, but Barra was able to keep the truck in its own lane until he maneuvered it to a stop on the southbound shoulder of the highway.

"One of the dual wheels proceeded directly down the center of the road and passed the automobile driven by Lenseler. The other wheel crossed into the northbound lane of traffic, directly in front of the tractor-trailer. In an attempt to avoid colliding with the wheel, Halmel testified that he applied his brakes immediately and attempted to turn his truck to the right. He stated that the wheel struck the front of the truck, throwing him against the windshield, and thereafter he did not remember anything until he was told to enter an ambulance after the accident. The tractor-trailer cab swerved into the southbound lane, and the rear of the truck jack-knifed across the southbound lane onto the shoulder of the road. The decedents' automobile struck the tractor-trailer resulting in their deaths.

"The record shows that in June of 1958, Mr. Fred Curl of the Nelson Concrete Culvert Company, which was not made a party to this action, inquired of Mr. Stilley concerning the possibility of renting one of Stilley's mixer

trucks. It appears that two concrete mixer trucks were leased on monthly rental, Nelson Concrete to care for their maintenance and repair. At the time of the conversation, Mr. Curl inquired whether Stilley had any drivers available who were familiar with the operation of the mixer trucks. Stilley recommended Ned Thomas Barra, who was not then in the Stilley employ, but who had been employed by Stilley until Stilley ran out of work in the spring of 1958.

"The concrete mixer truck involved in the accident was driven by Howard Rector, a Nelson Concrete employee, until August 25th, while Barra drove the other mixer truck. On August 11th, Rector's truck developed a flat on the outside left rear dual tire. Mt. Vernon Tire Service Corporation was employed by Nelson Concrete to repair the tire, and Mt. Vernon Tire sent its serviceman, Alvie Joe Burke, to make the repair. Burke testified that he removed the entire wheel, replaced the tire, reinflated it and replaced the wheel by the use of a hand wrench and a cheater bar, which he stated was used for leverage. Burke further testified that the nuts which hold the wheel onto the wheel drum are lock nuts, and that once the nut is on tight, it cannot come off. Burke stated that after he let the mixer truck to the ground he used the cheater bar to make sure the nuts were on tight, informed Rector that the tire was repaired, and Rector looked at the tire.

"Rector testified he operated the truck every day after August 11th until August 25th, sometimes two or three times a day. He stated that the truck operated normally, and that he noticed nothing unusual about the performance of the left rear wheels.

"Barra's truck broke down on August 25th, and when he appeared for work on the 26th he was told to use the truck previously used by Rector, since Barra was more familiar with its operation than was Rector. Barra inspected the oil and motors of the truck, the air pressure in

the tires, and sprayed the metal parts of the truck with paraffin, all of which was customary procedure for the truck drivers employed by Nelson Concrete. Walter Goddard, plant superintendent at Nelson Concrete, testified that the Nelson drivers were not required to check the mechanical parts of the trucks, other than to see that the truck operated. About noon on the 26th Barra was ordered to deliver a load of concrete to a job site and was returning from the site when the accident occurred.

"Officer Lee Lyons of the Illinois State Highway Police, called to the scene of the accident, testified he inspected the left rear wheel drum of the mixer truck after the accident and found the lugs which support the wheel to be partially stripped. The officer also stated he examined some tire marks to the north of the point of impact and found them to be of a wobbly, hit-and-miss nature, but he could not say whether they were caused by any vehicle involved in the accident. Barra testified he also inspected the threads on the wheel lugs immediately after the accident and found them to be in fair condition. Melvin Donoho, a body shop foreman of the Homan Motor Company where the mixer truck was sent by Nelson Concrete for repairs after the accident, stated that the lugs were not stripped; two of the ten lugs on the wheel drum were bent and had to be replaced, Donoho stating that they were bent after the wheels had rolled off. Officer Lyons and Barra testified that the lug nuts which held the wheels onto the wheel drum were never found."

The opinion initially issued by the appellate court reversed the circuit court's judgment *n.o.v.* and remanded the cause with directions to enter judgment on the verdict of the jury in favor of all defendants and counterdefendants and against all plaintiffs and counterplaintiffs. Subsequently, after the appellees filed a petition for rehearing and "motions to expunge the order" entered by the appellate court, a supplemental opinion was issued. The court then concluded that since, as to appellees Martino, Saunders, and

Halmel, the trial court's judgments *n.o.v.* were actually findings against defendants Barra and Mt. Vernon Tire on the issue of liability only, with damages yet to be ascertained at a trial for that purpose, such orders were not final and appealable under *Davis* v. *Childers,* 33 Ill.2d 297, notwithstanding the trial court's finding that "no just reason exists for delaying appeal." (See Ill. Rev. Stat. 1965, chap. 110, par. 50(2).) The appellate court accordingly dismissed the appeal as to those appellees. In *Childers,* this court held that where, as here, a judgment *n.o.v.* on the issue of liability only is awarded a claimant, and a trial on the issue of damages is yet to occur, there is no final order upon which the party against whom the judgment *n.o.v.* has been awarded may predicate an appeal. The appellate court's dismissal of the appeal as to appellees Martino, Saunders, and Halmel was thus clearly correct and need not be further discussed herein. However, since the amount of damages ($3,000) claimed by counterplaintiff Cities Service had been stipulated by the parties as proper, if liability existed, the trial court's order of judgment *n.o.v.* as to it was final. The appellate court adhered to the holdings in its original opinion as to Cities Service, and further disposed of a new contention based upon the doctrine of *res ipsa loquitur* raised by Cities Service for the first time in its petition for rehearing.

Section 50(2) of the Civil Practice Act, (now Supreme Court Rule 304) provides in part: "If multiple parties or multiple claims for relief are involved in an action, the court may enter a final order, judgment or decree as to one or more but fewer than all of the parties or claims only upon an express finding that there is no just reason for delaying enforcement or appeal. * * *" Ill. Rev. Stat. 1965, chap. 110, par. 50(2).

As stated, the trial court in its order found that there was no just reason for delaying the appeal of such order. However, as we said in *Davis* v. *Childers,* 33 Ill.2d 297:

"* * * a trial court can not confer appellate jurisdiction by a finding that there is no just reason for delaying enforcement or appeal."

We deem that the trial court abused its discretion in finding that there was no just reason to delay appeal of its order. As the appellate court held, the trial court's judgments *n.o.v.* in favor of Martino, Saunders and Halmel were not final and under *Davis* v. *Childers,* 33 Ill.2d 297, were not appealable. The judgment as to Cities Service was final and, if it were the only judgment in the case, of course would have been appealable. But, under the circumstances here, to permit its appeal was to authorize a piecemeal appeal.

One of the principal purposes of section 50(2) is to avoid piecemeal appeals. The court in *Ariola* v. *Nigro,* 13 Ill.2d 200, 207, stated: "Moreover, we may consider that section 50(2) was aimed at discouraging piecemeal appeals, in the absence of just reason * * *."

Here, there is to be a trial for the purpose of determining damages with respect to Martino, Saunders and Halmel, after which there can be appeals which may come for appellate review. Appellate consideration of the Cities Service judgment alone is contrary to the purpose and policy underlying section 50(2). There are no circumstances present to require that this isolated judgment be considered as a matter of justice before the entering of appealable judgments in the related matters.

The judgment of the appellate court as to Martino, Saunders and Halmel is affirmed and is reversed as to Cities Service Oil Company and the cause is remanded to the circuit court of Cook County for further proceedings in conformity with the views expressed in this opinion.

*Affirmed in part and reversed in part and remanded.*