Apex Mutual Insurance Company, a Corporation, Plaintiff-Appellee, v. John Christner, et al., Defendants-Appellants.

**Gen. No. 50,851.**

First District, Fourth Division.

September 18, 1968.

154

McCORMICK, P. J., dissenting.

Rosenblum, Lipnick & Joseph, and Bennett H. Shulman, of Chicago (Arthur Rosenblum and Erwin Rubin, of counsel), for appellants.

Brooks and Simon, and Gilbert Gordon, of Chicago (Gilbert Gordon, of counsel), for appellee.

MR. JUSTICE ENGLISH delivered the opinion of the court.

This is a declaratory judgment proceeding brought by plaintiff against John Christner, the owner of an automobile insured against public liability by plaintiff. The car was in an accident while being driven by Helen Christner, John's wife and a codefendant. Leo Marks and Louis Clepp, the persons allegedly injured in the accident, were also named as defendants. Plaintiff sought a declaration relieving it of the duty to defend or to pay any judgment against Helen Christner, on the ground that she had breached the cooperation clause of the insurance policy and that plaintiff had not waived this breach. The court found all material issues in favor of plaintiff and entered a decree granting the relief requested. Defendants moved for a "judgment notwithstanding the verdict" [sic] or, alternatively, for a new trial. These motions were denied. Defendants have appealed, raising the sole issue of whether plaintiff waived its right to assert Helen Christner's noncooperation as a defense to its obligations to her under the policy.

There is no material dispute over the facts. At about 12:40 a. m., on August 2, 1962, Helen Christner, while driving alone in her husband's automobile, collided with a squad car occupied by Police Officers Leo Marks and Louis Clepp. She was included as an insured by the terms of the liability policy carried by her husband with

plaintiff. She informed plaintiff by telephone of the accident before 9:30 a. m. on that morning, at which time she appeared at plaintiff's local office and was interviewed by its claims supervisor. On August 8, its field investigator obtained from her at her home a signed statement concerning the accident.

On November 21, 1962, the law firm of Rosenblum, Lipnick and Joseph filed a personal injury action on behalf of Clepp and Marks against Helen and John Christner. Plaintiff assigned the defense of that case to the law firm of Gillin and Owens.[1] As attorneys for the Christners, Gillin and Owens filed an answer, and served and answered interrogatories.

On April 18, 1963, discovery depositions of Clepp and Helen Christner were taken at the office of Rosenblum, Lipnick and Joseph with a representative of Gillin and Owens present. Mrs. Christner's testimony was in substantial agreement with the account of the accident contained in the statement which she had given to plaintiff's investigator: she stopped her car on the street to permit the police car to back out of a driveway; after the police car had completed this maneuver and started to move forward along the street, she proceeded, following behind; after traveling forward for two or three car lengths, the police car stopped suddenly and without warning; as a result, she struck the police car in the rear.

On September 17, Mrs. Christner had a conversation with Officer Marks in the restaurant where she worked as a waitress. Thereafter, she telephoned Marks' attorney, Rosenblum, and the next day went to his office where she executed a handwritten statement concerning the accident. Rosenblum's office notified Gillin and Owens by telephone on the same day that Mrs. Christner

---

[1] This was not the same firm of attorneys who later filed the declaratory judgment action on behalf of plaintiff.

had given them a statement. This statement asserted relevant facts not previously disclosed to plaintiff, declared that she had told untruths in her deposition, and admitted that she was fully and solely responsible for the accident.

Rosenblum did not furnish a copy of the statement to Gillin and Owens, but on October 3 they obtained a copy by court order. (We would assume from this that request for a copy had been denied by counsel.) Two weeks later they took a discovery deposition of Officer Marks. Part of this deposition dealt with Mrs. Christner's connection with the police as a crossing guard, the circumstances of her meeting with Marks in the restaurant, and the events surrounding her giving the statement to Rosenblum.

On November 4, 1963, the policemen plaintiffs in the personal injury action filed a motion for summary judgment on the issue of liability. The court granted time for the filing of papers in opposition and set the motion for hearing on December 17.

On December 11, plaintiff, through other counsel, filed this declaratory action. Defendants were served with process on December 15. Until this time, plaintiff had not served a reservation of rights or notified its insureds in any manner that under the terms of the policy it no longer considered itself bound to defend Mrs. Christner. However, the gist of its complaint for declaratory relief was that when Mrs. Christner gave Rosenblum the statement admitting responsibility, she breached the condition of the policy requiring her to cooperate with plaintiff in the conduct of the defense and that because of this breach, plaintiff was neither obligated to defend that lawsuit on her behalf nor to pay any judgment which might be rendered against her. For the purpose of narrowing the issues on appeal, defendants have conceded in their brief that the conduct of Mrs. Christner did constitute a breach of the cooperation clause of the policy.

158

■ On December 17, 1963, Gillin and Owens filed a counteraffidavit in opposition to the motion for summary judgment in the personal injury action. This affidavit contained a description of the accident according to the testimony of Helen Christner in her discovery deposition, and denied knowledge of "the validity or circumstances under which the alleged statement (to Rosenblum) was given or taken." It also informed the court of the pending declaratory action and requested that all proceedings in the personal injury action be stayed. The court, however, did not wait for determination of the declaratory judgment action, and entered summary judgment on the issue of liability in favor of Clepp and Marks and against both John and Helen Christner.[2]

On January 17, 1964, Gillin and Owens filed a motion to vacate the summary judgment. This motion was denied on February 17.

The declaratory action was tried on March 18 and 19, 1965, and on May 17 the court entered the decree in plaintiff's favor. On plaintiff's motion, the court vacated its decree on May 28 and entered an amended decree nunc pro tunc as of May 17, declaring plaintiff free of any obligation to defend Helen Christner or pay any judgment which might be rendered against her in the personal injury case. The decree as first entered had not limited plaintiff's relief to Mrs. Christner, but had referred generally to plaintiff's release from the obligation

---

[2] Without evidence and despite issues of fact as to the negligence of Helen and as to the prerequisite agency relationship between Helen and John. Nor did the court find that there was "no genuine issue as to any material fact" (Civil Practice Act, § 57), but, rather, found:

The issues in this suit at law are in favor of the Plaintiffs and against the Defendants on the issue of liability.

This order, however, is not a final judgment (Martino v. Barra, 37 Ill2d 588, 229 NE2d 545) and is subject to correction or vacation at any time prior to ultimate disposition of the case.

to defend the lawsuit and to pay any judgment rendered therein. The court found ". . . the actions of the defendant Helen Christner were in violation of the conditions of the insurance policy and such violation was not waived or excused by any actions or omissions of the plaintiff . . . ."

Meanwhile, on May 24, 1965, the plaintiffs in the personal injury suit made a motion to advance that cause for hearing on the remaining issue of damages. The motion was denied, the order including the recital: ". . . the defendants through their attorney Gillin and Owens objecting to any advancement, the court having heard arguments of counsel . . . ." However, with regard to this motion to advance, it is stipulated in the case now before us that the attorney from Gillin and Owens testified (on defendants' motion herein for "judgment notwithstanding the verdict") that he had told Rosenblum (attorney for the injury action plaintiffs), before the motion was presented, that he did not know the status of the declaratory judgment suit at that time; that Rosenblum had prepared in advance the written order denying his own motion; that when the judge told Rosenblum that no written order was necessary, Rosenblum insisted he wanted the draft order anyway; and, further, that the attorney from Gillin and Owens made no statement of any kind before the court at the hearing on the motion to advance.

. . . . . .

Difficulties arise when an injured party brings an action against an insured, and investigation by the insurer reveals a breach of condition or an essential fact tending to place the claim outside the coverage of the policy. The insurer's interest in defending against the claim while restricting its obligation to the terms of the policy, presents the insurer with an urgent strategical problem: whether or not to defend the insured in court. See Shapiro v. DiGuilio, 95 Ill App2d 184, 237 NE2d 771.

■ It is well settled that assumption of the insured's defense constitutes a waiver by the insurer of all questions of policy coverage. Bourne v. Seal, 53 Ill App2d 155, 203 NE2d 12; American Cas. Co. of Reading, Pa. v. Shely, 314 Ky 80, 234 SW2d 303 (1950); see De Hart v. Illinois Cas. Co., 116 F2d 685, 688. If, therefore, in spite of its doubts as to coverage, the insurer elects to take over the insured's defense, it will afterwards be estopped from denying its own liability under the policy. The estoppel referred to here is "estoppel in pais"; it is ordinarily justified on the ground that the insurer has prejudiced the insured's right to control his own defense. See the dissent in De Hart v. Illinois Cas. Co., 116 F2d 685, 688–689; and Rom v. Gephart, 30 Ill App2d 199, 173 NE2d 828.

■ With this in view, the insurer may wholly decline to assume the insured's defense when coverage is in doubt. Having refused to enter the litigation, the insurer cannot subsequently be estopped from setting up in its own defense any matter not decided in the original action. Gould v. Country Mut. Cas. Co., 37 Ill App2d 265, 185 NE2d 603; Potter v. Great American Indemnity Co., 316 Mass 155, 55 NE2d 198; see Restatement of Judgments, § 107. Abstention presents a hazard, however, since the insurer will be "collaterally estopped" in the subsequent suit as to all issues which had been decided in the prior action. Sanitary Dist. of Chicago v. United States Fidelity & Guaranty Co., 392 Ill 602, 65 NE2d 364; Palmer v. Mitchell, 57 Ill App2d 160, 206 NE2d 776. Further, the danger of collateral estoppel is substantially increased if the insured and injured parties are inclined to conspire for the purpose of establishing such facts as they may select to place themselves under the policy's coverage provisions. See Note in 4 Okla L Rev 125. Finally, the nonliability of the insured is potentially the most effective bar to any policy claims against the insurer. Where the possibility exists of making a success-

161

ful defense on behalf of the insured, the insurer has much to gain from placing its first reliance upon this line of action, since by declining to defend, it would sacrifice all opportunity to contest the injured party's claim.

Clearly, then, neither of these two alternatives is very satisfactory to an insurer. Sims v. Illinois Nat. Cas. Co. of Springfield, 43 Ill App2d 184, 199, 193 NE2d 123, cited with approval in Lincoln Cas. Co. v. Vic & Mario's, Inc., 62 Ill App2d 262, 267, 210 NE2d 329, discusses the insurer's options in such a predicament:

> However, all authorities agree that quite often an insurer is faced with a dilemma as to whether to defend or to refuse to defend. In cases of doubt the answer is simple. (1) Seek a declaratory judgment as to its obligations and rights or (2) defend under a reservation of rights.

The reservation of rights is a means by which, prior to determination of the liability of the insured, the insurer seeks to suspend the operation of the estoppel doctrines through a nonwaiver agreement. When coverage is in doubt, the insurer will offer to defend the insured under such an agreement, reserving to the insurer all of its policy defenses in case the insured is found liable. Courts have generally held such agreements valid. E. g., Gallaway v. Schied, 73 Ill App2d 116, 219 NE2d 718; 81 ALR 1383; Blashfield, Automobile Law and Practice, § 342.23.

Estoppel in pais operates as a result of the insurer's monopolization of the insured's defense, since the insured, in reliance thereon, refrains from seeking other counsel. But no such reliance can be claimed where the insurer has defended under a reservation of rights, since the insured could have rejected the insurer's offer of counsel if he had chosen to do so. Hawkeye Cas. Co. v. Stoker, 154 Neb 466, 48 NW2d 623. Also see Schneider v.

Autoist Mut. Ins. Co., 346 Ill 137, 178 NE 466. Whether, in reserving rights, the insurer also avoids the strictures of collateral estoppel is, however, unsettled. See the discussion in Shelby Mut. Cas. Co. v. Richmond, 185 F2d 803, 805. It may be that since collateral estoppel arises from privity and since the nonwaiver agreement does not alter the fact of privity, it would not suspend the operation of collateral estoppel, thus substantially diminishing the value of a reservation of rights in many cases. See McNeely, Illegality as a Factor in Liability Insurance, 41 Col L Rev 26.

The second solution to the insurer's dilemma (as referred to in Sims, supra) is through declaratory judgment. The purpose of this procedure is to resolve the issue of policy coverage with finality either prior to the commencement of suit by the injured party or while such suit is pending.

■ The right of the insurer to obtain a judicial declaration on the issue of policy coverage prior to adjudication of the personal injury claim has been favored by the weight of Illinois authority. E. g., Lentin v. Continental Assur. Co., 412 Ill 158, 105 NE2d 735; Walton Playboy Clubs, Inc. v. City of Chicago, 37 Ill App2d 425, 185 NE2d 719; Country Mut. Ins. Co. v. Bergman, 38 Ill App2d 268, 185 NE2d 513; Farmers Elevator Mut. Ins. Co. v. Burch, 38 Ill App2d 249, 187 NE2d 12; Farmers Automobile Ins. Ass'n v. Hamblin, 42 Ill App2d 482, 192 NE2d 450; Employers Liability Assur. Corp. v. Country Mut. Ins. Co., 50 Ill App2d 341, 343, 200 NE2d 98; 142 ALR 8, 12; also Sims and Lincoln Cas. Co., supra. Contra, State Farm Mut. Automobile Ins. Co. v. Morris, 29 Ill App2d 451, 173 NE2d 590; Valente v. Maida, 24 Ill App2d 144, 164 NE2d 538.

■■ We cannot blind ourselves to the perils of the insurer's position. Where the injury action complaint states different causes of action or theories of recovery, only some of which are covered by the policy, the insurer

is bound to defend all those which are within the policy. Canadian Radium and Uranium Corp. v. Indemnity Ins. Co. of North America, 342 Ill App 456, 97 NE2d 132. The penalty for failure to fulfill this duty is that any judgment entered is conclusive against it, absent fraud. Gould v. Country Mut. Casualty Co., 37 Ill App2d 265, 185 NE2d 603. In the instant case, plaintiff had a duty to defend John Christner and to indemnify him against any judgment he might suffer up to the policy limits as a result of the personal injury litigation. Plaintiff owed the same duty to Helen Christner until the time when she excused it from this obligation by virtue of her conceded breach of the policy conditions. The sole issue on review thus becomes whether plaintiff is estopped from asserting this excuse by virtue of its later conduct with respect to the personal injury litigation.

■ An insurer will not be estopped from asserting a breach of the cooperation clause by its insured if it repudiates liability within a reasonable time after becoming aware of the insured's failure to cooperate. Krutsinger v. Illinois Cas. Co., 10 Ill2d 518, 526, 139 NE2d 767; 70 ALR2d 1199. See also Allstate Ins. Co. v. Keller, 17 Ill App2d 44, 50, 149 NE2d 482, to the same effect.

■ In order for plaintiff to have preserved its defense under the policy, we must find, therefore, that notice of its disclaimer was given to Mrs. Christner and that such notice was timely. As mentioned above, the notification communicated to her consisted of her being served with process in the declaratory action filed by plaintiff. We believe that this constituted sufficient notice as it fairly informed her of plaintiff's position. 38 ALR2d 1167.

The filing of the declaratory action by plaintiff was a clear manifestation that it was claiming to have been relieved of any duties owed to Mrs. Christner by virtue of the insurance policy, due to her now-admitted failure

164

to cooperate with the defense. From the standpoint of notice, there does not appear to be any material difference between this method of procedure and the method of serving notice of the same intention through a reservation of rights.

> . . . The immediate question which the surety must decide is whether it is obligated to defend the suit against the insured in the state court. Obviously its decision cannot await the determination of that suit, nor need the determination of its duty in this respect interfere with the trial of the state suit . . . . In similar situations it has been held in a number of recent cases that the insurer is entitled to be advised by the court whether or not it is obligated to defend and indemnify the insured against claims upon which suits are threatened or have already been brought. (Aetna Casualty & Surety Co. v. Yeatts, 99 F2d 665, 669; cited with approval in Nationwide Mutual Insurance Co. v. Simms, 231 F Supp 787, 789, which was a case involving a cooperation clause of an insurance policy.)

In the light of these generalizations, the case of Farmers Automobile Ins. Ass'n v. Janusick, 30 Ill App2d 352, 174 NE2d 75, is of interest. After an extensive review of the authorities with respect to the use of declaratory actions in this type of case, the court stated at page 359:

> To summarize, the foregoing authorities indicate that declaratory judgment statutes should be liberally construed; that the construction of an insurance policy is the proper subject of a declaratory judgment action; and that the insurance company may ask to have its policy construed prior to the time that a suit against the insured has been prosecuted to judgment. Declaratory judgment statutes should be used to promote and facilitate rather than delay and impede the meting out of justice.

In Janusick, "the attorneys for the insurance carrier advised [the court] that they felt that they had a right to defend Janusick without waiving any policy defenses which they might have." In reply to this contention, the court stated:

> It is the holding of this Court that the question of coverage raised by the declaratory judgment action is not moot. Further, in view of this Court's ruling that the declaratory judgment action may not be used to further delay the trial of the damage suits, *it is the holding of this Court that the attorneys for the insurance carrier have the right to defend such suits without waiving the question of coverage and that that question may be resolved either in the pending declaratory judgment action or in any subsequent garnishment or direct action instituted against the insurance carrier.* (P 360.) (Emphasis added.)

In Janusick, a nonwaiver agreement was executed and, also, the insureds were represented by both personal and insurance company attorneys in the damage suits. However, the court in Knapp v. Hankins, 106 F Supp 43, 46, stated:

> Plaintiffs argue that the Company has not attempted to obtain a nonwaiver agreement and make a defense under a reservation of rights. The court cannot see why the Company should be required to expend the money for a defense if the policy is void and in any event it has not been shown that such an agreement could be obtained from defendant. This argument is beside the point. The Company should not be forced to choose between not defending and waiving its rights by employing its own counsel before it has an adjudication of the validity of the contract of insurance. See Builders & Manufacturers Mut. Cas. Co. v. Paquette, supra, 21 F Supp at page 865.

166

At page 47 the Knapp court considered the argument that the company could sit idly by and let the defendant employ counsel of his own choosing to defend the damage suit, and dismissed it as unfair because the company would be bound by any judgment entered. Further, the insured has no duty to defend but only to cooperate in the defense of the action for damages. Therefore, unless the insurance company were to defend, there might be no defense at all.

■■■ In order to effectuate a result consonant with plaintiff's right to defend (as pronounced in Janusick), and fairly to protect it from the strictures of estoppel in pais, we hold that personal service in the declaratory action brought by it preserved those defenses enumerated in the complaint for declaratory relief even though the insurer, without objection by the insured, continued meanwhile to represent its insured in the injury action. Cf. Krutsinger v. Illinois Cas. Co., supra, at 526.

A complaint for declaratory relief is an unequivocal assertion of nonliability by the insurer. Personal service affords the insured a formal and proper notice. To require. The declaratory judgment route impresses us as redundancy which the law does not and should not require. The declaratory judgment route impresses us as being eminently sound, as the insurer may preserve its defenses without losing its right under the contract to represent its insured if the defense is found invalid, and the insured is not forced to employ private counsel unless he opts so to do.

In the instant case, plaintiff was bound to defend John Christner regardless of his wife's conduct. John's defense necessarily hinged on the nonliability of Helen or failure of the injured plaintiffs to prove the agency relationship upon which they sought to hold him liable for her conduct. Therefore, whether or not the insurer was obligated to defend Helen, it was bound to continue to defend the suit on John's behalf. Further, John's interests

in the personal injury action presented no conflict situation since they were thoroughly consistent with Helen's interests and manifestly adverse to the interests of the allegedly injured officers.

Helen Christner was served in the declaratory action on December 15, 1963. A firm of attorneys retained by plaintiff had filed an answer on her behalf in the personal injury suit. At no time did she indicate a desire to have someone other than those attorneys (Gillin and Owens) act as her counsel in that action. All things considered, she was fairly informed of plaintiff's position. With respect to estoppel in pais, the filing of the declaratory action (after service) had the same legal effect as a reservation of rights. Cf. 38 ALR2d 1167. The insurer's intent to assert its disclaimer was manifested to the insured, whose consent may be inferred from her acquiescence. See Ancateau v. Commercial Cas. Ins. Co. of Chicago, 318 Ill App 553, 556, 48 NE2d 440.

 However, defendants argue that plaintiff's failure to disclaim liability promptly upon discovering a breach of the cooperation clause waived any rights which might otherwise have accrued as a result of the breach. While it is true that an insurer waives the right to assert a breach of policy condition by not acting with reasonable promptness, the instant plaintiff did assert its disclaimer in apt time.

 On September 18, 1963, plaintiff was informed that a new statement had been given to Rosenblum by Mrs. Christner. Nothing in the record indicates that it learned the precise contents of this statement until October 3, when it resorted to a motion in court in order to procure a copy. Nor did it delay unreasonably in scheduling the deposition of Officer Marks for October 17. In view of the way in which the statement came into existence, we consider it to have been a necessary part of plaintiff's investigation for it to have taken Marks' deposition when, for the first time, plaintiff was able

168

to learn of the essential pertinent facts and circumstances surrounding the statement. A waiver being the relinquishment of a known right, plaintiff could therefore not have waived the breach before October 17. Within less than two months thereafter, the declaratory action was filed and service obtained upon the defendants. Defendants contend, however, that two months was too long. Plaintiff counters that this was only a reasonable period of time, as it was necessary to research the law, digest the facts, make an evaluation, and decide on a course of action, with the approval of those in authority to make such a determination.

In Allstate Ins. Co. v. Keller, supra, at 51, the court pointedly referred to the fact that "plaintiff did not reserve its rights against defendant until almost *one year and a half after the filing of the answer* in the personal injury action *although it had knowledge of the breach* [of the cooperation clause] *at that time.*" (Emphasis added.) The court considered this too long a time and held that "[p]laintiff's extended delay in informing defendant of its intention to deny liability clearly constituted a waiver of the breach." Quoting from Krutsinger, supra, at 526, the court reasoned:

> When an insurer wishes to assert its non-liability under the policy, it must notify the insured *without delay*. The reason is that "[t]he claim might be of such a character as that the amount of damages recovered in a lawsuit by the insured [sic; injured?] party would exceed the indemnity and subject the insured to considerable loss and damage, and therefore the insured should have a right to know with *reasonable promptness* the attitude of the indemnity company, so that he might be in a position to take such action as would not only protect the indemnity company, but save himself from loss and damages." (Interstate Casualty Co. v. Wallins Creek Coal Co.,

164 Ky 778, 781, 176 SW 217, 219.) (Emphasis added.)

 Following the usual application of the "rule of reason" to nonspecific time requirements,[3] it has thus been determined that in this situation a notification is "without delay" if it is communicated with "reasonable promptness." It is also apparent that a delay is reasonable if it is not so long as to prevent the insured from taking such action as would save him from loss and damages. It is also implicit in ascertaining "reasonable promptness" that all the time between the learning of the breach and the notification to the insured cannot be considered as "delay," because within that period some part of the time—reasonable in relation to the status of the pending litigation—must be allowed to the insurer to evaluate its position and to determine what route it will follow.

 Applying this standard to the instant case, notification within two months was most certainly "without delay," as we must be cognizant of the complexity of the insurer's problem—both in applying the particular facts to the law with certainty and in deciding which of the possible courses to pursue. Further, the only proceeding which transpired in the two-month period here in question was the motion for summary judgment as to liability filed about midway in the period. True, action on such a motion is a critical stage in the proceedings and one which carries the possibility of substantial prejudice to the insured's position. Yet, several factors must be here noted: (1) No action was taken on the motion until after service in the declaratory action; (2) objection to the granting of this motion would have been futile if Helen Christner's final statement were accepted as true; (3) Helen Christner's first story was urged upon the court by way

---

[3] See Simms v. Andrews, 118 F2d 803, 806 (10th Cir); Prudence Mut. Cas. Co. v. Sturms, 37 Ill App2d 304, 308, 185 NE2d 366.

of the counteraffidavit filed by Gillin and Owens; (4) Gillin and Owens requested the court not to act on the motion for summary judgment pending disposition of the declaratory action; and (5) Helen Christner made no attempt to obtain representation by attorneys other than Gillin and Owens. We conclude that Helen Christner was afforded the maximum protection practical under the circumstances. In view of her final statement (which she contends spoke the truth), Mrs. Christner's only line of defense was on the question of damages, which issue remained unaffected by the summary judgment.

Lastly, defendants contend that plaintiff waived the defense of breach of policy condition by virtue of the conduct of Gillin and Owens in continuing to defend the personal injury action after learning of the breach. As we have held that plaintiff had not waived the breach as of December 15, 1963 (the date of service on defendants in the declaratory action), it is only necessary to consider the legal effect of subsequent events.

On May 17, 1965, the trial court ordered the declaration sought by plaintiff. During the interim in the personal injury action, counteraffidavits in opposition to the motion for summary judgment on liability were filed, summary judgment was granted, and a motion was made to vacate the summary judgment.

Defendants direct the court's attention to Allstate, where a further ground for finding waiver was held to be the conduct of the attorneys retained by the insurer in their representation of the insured (at page 53). In Allstate the attorneys took the insured's deposition for the purpose of strengthening the insurer's position in the anticipated declaratory action. Although aware of the then existing conflict of interest, they made no disclosure to the insured.

The Allstate court stated, at page 52:

> It is the law of this State that an attorney is required to disclose to his client all facts and cir-

171

cumstances within his knowledge, which, in his honest judgment, might be likely to affect the performance of his duty for that client. Catherwood v. Morris, 360 Ill 473, 481 (1935). A client may presume from an attorney's failure to disclose matters material to his employment that the attorney has no interest which will interfere with his devotion to the cause confided in him, or betray his judgment. Hunter v. Troup, 315 Ill 293, 302 (1925). . . .

"It is unprofessional to represent conflicting interests, except by express consent of all concerned . . . ." Hawkeye Cas. Co. v. Stoker, supra, at 481. Citing American Employers Ins. Co. v. Goble Aircraft Specialties, Inc., 205 Misc 1066, 131 NYS2d 393, 401–402, the Allstate court continued, at pages 52–53:

". . . His duty to the assured is paramount. The Canons of Professional Ethics make it pellucid that there are not two standards, one applying to counsel privately retained by a client, and the other to counsel paid by an insurance carrier. . . ."

"Where an insurer's attorney has reason to believe that the discharge of his duties to his client, the insured, will conflict with his duties to his employer, the insurer, it becomes incumbent upon him to terminate his relationship with the client. (Citations.) It was the duty of plaintiff's attorneys upon learning of the possible conflict of interests between plaintiff and defendant, to immediately notify defendant of this fact. *Their failure to take such action can be attributed only to their desire to strengthen plaintiff's position in preparation for the filing of the instant suit.* It would be untenable under such circumstances to allow plaintiff to disclaim liability under the policy." (Emphasis added.)

172

As applied to the facts in Allstate, these statements are irrefutable. However, in the instant case no conflict appears between the interests of plaintiff and those of Mrs. Christner with respect to the professional representation afforded her by Gillin and Owens. Nothing helpful to plaintiff in the declaratory action was divulged to the attorneys by Mrs. Christner, nor was any attempt made to procure any information from her which would have been either helpful to plaintiff or damaging to her. Importantly, there was no issue raised with respect to any possibility that the injury claims would reach or exceed the policy limits. Since plaintiff is admittedly bound to pay any judgment rendered against its insured, John Christner, growing out of this accident, its interests in the personal injury action in no way conflicted with those of Helen who was sued as John's agent. The record does not indicate that Gillin and Owens were involved at all in the declaratory action. In any event, Helen had notice of plaintiff's position by virtue of the declaratory action.

While the attorney retained by the insurer in a case such as this, represents the insured and not the insurer (Thrasher v. United States Liability Ins. Co., 19 NY2d 159, 278 NYS2d 793, 225 NE2d 503 (1967)), no breach of duty will be imputed to him merely because his fee is not being paid by his client. Professional responsibility should be presumed until some evidence to the contrary is adduced. See Lysick v. Walcom, — Cal —, 62 Cal Rptr 640, which is of interest though distinguishable on the facts.

Considering the period concluding with entry of the declaratory decree (May 17, 1965), we find that there had been no waiver by plaintiff. Defendants, however, lay great stress on two more events in this complex chronology which they say indicate waiver by plaintiff and therefore must be analyzed in disposing of this appeal. On May 28, 1965, an order modifying the May 17

173

declaration was entered nunc pro tunc as of May 17. In substance this modification provided that only Helen and not John Christner had breached the cooperation clause, and that therefore plaintiff was relieved of its obligations only as to Helen. This was simply a correction to express the court's decision more accurately, and is of no consequence here.

Meanwhile, on May 24, a motion to advance the personal injury action was denied by the assignment judge. The presence of an attorney from Gillin and Owens in court on behalf of the Christners at the time of this motion is relied upon by defendants as a waiver on the part of plaintiff. Referring again to what apparently occurred in that court, we note that: no statement of any kind was made by the Gillin and Owens attorney at the hearing on this motion; on the other hand, he did tell Rosenblum that he knew nothing of the status of the declaratory action at the time this motion was being presented; Rosenblum drafted the order denying his own motion in advance of the hearing, and persisted in obtaining entry of the written order despite the trial judge's statement that a written order was not necessary.

We find in this episode nothing of any substance to support defendants' contention of a waiver by plaintiff. The attorney from Gillin and Owens appeared on the motion in response to notice by Rosenblum, and completely unaware that the declaratory decree a week earlier had relieved the insurer of its responsibility to furnish such representation.[4] As the trial judge told Rosenblum, he knew or should have known that his motion would be denied, and Rosenblum's presentation of the pre-prepared

---

[4] It should be borne in mind that, under the decree as corrected four days later, Gillin and Owens were still obligated to appear on behalf of John Christner. Furthermore, the court in the injury case had not given Gillin and Owens permission to withdraw and presumably would not have done so without the substitution of another attorney for Mrs. Christner.

draft order indicates the truth of this statement. No other inference is reasonable but that the entire incident was merely an attempt to establish waiver. It, of course, resulted in no prejudice whatsoever to the rights of Helen Christner.

The decree of the Circuit Court is affirmed.

Affirmed.

DRUCKER, J., concurs.

McCORMICK, P. J., dissenting:

I must respectfully dissent to the holding of the majority opinion. The only question involved in the case is whether or not the plaintiff, Apex Mutual Insurance Company, notified the defendant Christners in ample time of its reservation of rights under the policy. There is no question, where the coverage is in doubt because of a breach of condition or an essential fact tending to place the claim outside the coverage of the policy, that if the insurance company defends it must notify the insured of its intention to stand on its rights.

In the majority opinion it is pointed out that the assumption of the insured's defense constitutes a waiver by the insurer of all questions of policy coverage. The opinion states: "If, therefore, in spite of its doubts as to coverage, the insurer elects to take over the insured's defense, it will afterwards be estopped from denying its own liability under the policy." If the coverage is in doubt in the opinion of the insurance company, it may refuse to enter the case at all. The court points out in the opinion that if the insurance company refuses to enter the litigation the insurer cannot subsequently be estopped from setting up in its own defense any matter not decided in the original action. However, such abstention presents a hazard since the insurer will be "collaterally estopped" in the subsequent suit as to issues decided in the prior action. The majority opinion states:

175

"The reservation of rights is a means by which, *prior to determination of the liability of the insured,* the insurer seeks to suspend the operation of the estoppel doctrines through a non-waiver agreement. When coverage is in doubt, the insurer will offer to defend the insured under such an agreement, reserving to the insurer all of its policy defenses in case the insured is found liable." [Emphasis supplied.]

In Gallaway v. Schied, 73 Ill App2d 116, 219 NE2d 718, the court said at page 126:

"It has long been settled that an insurer will not be estopped from setting up the defense of non-cooperation by participating in the defense of the action against the insured, *if,* at the same time, it gives notice to the insured that it does not waive the benefit of such defense. [Citing cases.]"

In Illinois it is not necessary that a formal agreement be entered into, and the giving of notice to the insured is sufficient. Where the insured desires to have an adjudication of its liabilities under the policy he can, of course, proceed by way of a declaratory judgment action. However, it would seem that if he starts the declaratory judgment action after the suit is pending and the attorneys hired by the insurance company have entered their appearance for the insured, the better practice would be to file notice reserving rights.

The majority opinion states: "The right of the insured to obtain a judicial declaration on the issue of policy coverage *prior to adjudication* of the personal injury claim has been favored by the weight of Illinois authority. [Citing numerous cases.]" That statement is entirely in accord with this dissent.

The opinion states: "An insurer will not be estopped from asserting a breach of the cooperation clause by its insured if it repudiates liability within a reasonable time

after becoming aware of the insured's failure to cooperate. Krutsinger v. Illinois Cas. Co., 10 Ill2d 518, 526, 139 NE2d 767; . . . Allstate Ins. Co. v. Keller, 17 Ill App2d 44, 50, 149 NE2d 482, . . ." In Krutsinger the court said at page 526:

> "When an insurer wishes to assert its nonliability under the policy, it must notify the insured without delay. The reason is that '[t]he claim might be of such a character as that the amount of damages recovered in a lawsuit by the injured party would exceed the indemnity and subject the insured to considerable loss and damage, and therefore the insured should have a right to know with reasonable promptness the attitude of the indemnity company, so that he might be in a position to take such action as would not only protect the indemnity company, but save himself from loss and damages.' "

The court found that the defendant insurance company knew from the very inception—about the last of June 1953—that it was not accepting responsibility for the defense of the action. It did nothing until March 1954, when it filed, in another county, an action for a declaratory judgment of nonliability. The court said at page 527:

> "By its failure to repudiate the answer of July 3, 1953, or to seek leave to amend it if it was unsatisfactory, and by its failure to do anything further until many months later, we think that defendant effectively waived any rights it might have had to claim a breach of the policy conditions it relies on."

Allstate Ins. Co. v. Keller, 17 Ill App2d 44, 149 NE2d 482, was an appeal for declaratory judgment entered in favor of the insurance company, exempting it from any obligation to pay any judgment against the holder of an automobile liability insurance policy, in an action for personal injuries. The court said at page 50:

177

"We must now consider whether plaintiff waived the breach by defendant of the co-operation clause. The law is generally well settled that the failure of an insurer promptly to elect to disclaim liability, upon discovering facts indicating a breach of the co-operation clause by the insured, constitutes a waiver by the insurer of any rights which might otherwise accrue to it as a result of the breach."

In its opinion in Allstate the court quoted from Krutsinger.

In the Allstate case a year and a half elapsed from the time the insurance company had acquired knowledge of the breach on the part of its insured before it took any action. In the instant case, the personal injury action against the insured was filed on November 21, 1962. The insurance company assigned the defense of that case to Gillin and Owens, who filed an answer, and served and answered interrogatories. On September 17, 1963, Helen Christner informed the attorney for the plaintiff that she had made false statements and had told untruths in her deposition. On the same day counsel for the plaintiff informed Gillin and Owens that Helen Christner had given the statement. There is no indication in the record that Gillin and Owens asked for a copy, but on October 3 they obtained a copy by court order. It would seem that if they had asked counsel for the statement it would have been given to them.

Two weeks later Gillin and Owens took a discovery deposition of Officer Marks, part of which (as stated in the majority opinion) dealt with Helen Christner's connection with the police as a crossing guard, the circumstances of her meeting with Marks in the restaurant, and the events surrounding her giving the statement to Rosenblum. It is difficult to conclude that in taking this deposition Gillin and Owens were representing the Christners and not representing the insurance company.

178

On December 11, 1963, the insurance company filed an action for declaratory judgment, and the defendants were served on December 15, 1963. Treating the filing of the action as a formal disclaimer, it was nevertheless too late, and it would appear that in this case, as in All-state, it was the duty of plaintiff's attorneys, on learning of the possible conflict of interests between plaintiff and defendants, to immediately notify defendants of this fact.

The judgment of the Circuit Court should be reversed.