Chris Opheim, Plaintiff, v. Norfolk & Western Railway Co., Defendant and Third-Party Plaintiff-Appellee, v. Dealers Transit, Inc., Truck Insurance Exchange, et al., Third-Party Defendants-Appellants.

Gen. No. 53,411.

First District, Second Division.

April 7, 1970.

BURKE, J., dissenting.

Paulson & Ketchum, of Chicago (H. Tim Hoffman and Gordon H. S. Scott, of counsel), for appellants.

Lord, Bissell & Brook, of Chicago (R. R. McMahan, of counsel), for appellee.

MR. PRESIDING JUSTICE McCORMICK delivered the opinion of the court.

This is an appeal from an order granting summary judgment in favor of Norfolk & Western Railway Co. (Norfolk), third-party plaintiff and appellee, as to Count II of the third-party complaint against Dealers

Transit, Inc. (Dealers), and its liability insurer, Truck Insurance Exchange, appellants and third-party defendants. The third-party action only is involved in this appeal.

The trial court entered an order reciting that Dealers and its insurer had made a binding election to assume the defense of Norfolk against the original plaintiff, Chris Opheim, and directed them to assume the defense of Norfolk and indemnify it. The order was based on Dealers' acceptance of Norfolk's defense for a brief period at the outset of the case, and was entered while the case was still in the pleading stage, before any significant steps had been taken in preparation of the trial of the principal claim. The order contained a finding that there was no just reason for delay in enforcement or appeal. The court decided the case solely on the pleadings and on affidavits supporting and opposing Norfolk's motion for summary judgment.

The questions presented for review are:

1) whether the trial court was correct in entering a summary judgment that imposed an indemnity agreement by estoppel on Dealers; and
2) whether, absent a detrimental change of position, Norfolk was entitled to take advantage of the material mistake that had caused Dealers and its insurer initially to accept defense of the principal claim when that mistake was either mutual or known to Norfolk's attorney.

Dealers had a contract with Norfolk whereby Dealers was to inspect, unload and assemble automobiles brought to Norfolk's yard on car carriers. Chris Opheim, an employee of Dealers, was injured while performing duties under the contractual agreement. He sued Norfolk for damages he allegedly sustained as a result of the accident. Norfolk was served on Septem-

213

ber 21, 1967, and turned the matter over to its attorneys, Lord, Bissell and Brook. A Mr. Peterson of that firm wrote Dealers and demanded that they fulfill their obligations under a hold-harmless clause which was part of the contract with Norfolk, and which provided, in part, that Dealers would

> "be responsible for and shall indemnify and hold harmless Railroad Company from any and all loss, damage, liability, cost or expense resulting from injury to or death of persons (including agents, servants and employees of the parties hereto) arising out of, directly or indirectly, the performance or attempted performance by Contractor of the services contemplated by this agreement, unless caused by the sole negligence of the Railroad Company, its agents, employees, or servants."

An alternate assertion of Peterson's was that Dealers' active negligence in the matter obligated it to indemnify Norfolk. His letter included a request that Dealers assume Norfolk's defense, and threatened that unless defense was assumed, Norfolk would file a third-party complaint against Dealers. A copy of the letter was also sent to Dealers' insurer.

On October 20, 1967, a Mr. Reynolds of the carrier's firm called Norfolk's counsel and requested a copy of the hold-harmless provision so that the insurance company could evaluate the request for Dealers to assume Norfolk's defense. On October 26, 1967, the contract was mailed to the insurance company, and on that same day Norfolk's counsel filed an answer to Opheim's complaint and a third-party complaint against Dealers.

The following day Reynolds called Norfolk's counsel to notify him that the tender of defense was accepted and that he would assign counsel to the case. The conversation was confirmed by letter. The file was assigned

to Hinshaw, Culbertson, Moelmann & Hoban, and on November 28, 1967, Norfolk's third-party complaint was dismissed.

On December 1, 1967, at Hinshaw's request for investigative material regarding the accident, Norfolk's counsel sent the law firm a folder bearing Opheim's name; however, the file contained no information whatsoever about the accident of the current lawsuit, only some material relating to a prior accident of Opheim's.

On January 10, 1968, 44 days after Dealers and its insurer had entered the case, the tender of defense was revoked. During that time the Hinshaw firm had done nothing but obtain an order permitting them to inspect Opheim's income tax returns. The revocation was based primarily upon the fact that Opheim's complaint alleged only that the railroad company had been negligent; that the accident was therefore caused by the negligence, so that the hold-harmless clause was inapplicable by its own terms. The Hinshaw firm filed a motion to withdraw from the case, but the motion was denied. Subsequently, Norfolk's counsel reentered the case, refiled its third-party complaint against Dealers and its insurer, and sought and obtained summary judgment, which judgment bound Dealers to indemnify the railroad, hold it harmless from any and all loss, damage, liability, cost or expense resulting from Opheim's injury, and ordered it to assume Norfolk's defense, since it had made a binding "election." It is from that judgment that this appeal is taken.

■ Dealers' primary argument before this court is that the summary judgment was improper because Norfolk was, and still is, unable to demonstrate in what manner it was prejudiced by Dealers' short term assumption of the defense. Dealers reasons that whether calling the issue estoppel, election or waiver, there is no prejudice, and to affirm the judgment in this case would

215

create an absolute rule of law in derogation of the law as it now exists. Under the current law an indemnitee must show how it was prejudiced by the withdrawal from the case of the indemnitor. However, if we maintain that in this case the indemnitor was not privileged to withdraw, we would be holding that once an indemnitor enters a defense for his indemnitee he is forever thereafter prevented from withdrawing.

Norfolk argues that we need not concern ourselves at all with the issue posed by Dealers; we are not within the realm of estoppel, but rather, there was an oral contract whereby Dealers agreed to assume the defense. By later tendering its withdrawal Dealers breached its obligation, and accordingly, Norfolk was entitled to the relief given it. As an alternative argument Norfolk suggests that it would be a great travesty of justice were this court to adopt "a rule that prejudice is to be conclusively presumed only when withdrawal occurs after trial."

According to our understanding, the rule of law is that an insurer is to be considered to have waived his right to assert nonliability if his actions have prejudiced the insured, regardless of the stage of proceedings. The question is one of fact, and there is no rule of law which would dictate that such prejudice could only be shown after the trial. In spite of Dealers' argument that such a holding would make the reviewing court a mere ad hoc fact finder, we have found in the past that this method has worked well, and that the real travesty would result from establishing an ironclad rule which would fail to take into account the realities of life.

Under the absolute rule approach for which Norfolk is contending, Dealers should not now be allowed to withdraw from its defense of the Opheim suit against Norfolk; yet Norfolk has not been able to show this court in what manner it was harmed by the "false start." The only thing that occurred during Dealers'

representation of Norfolk was that counsel obtained an order allowing it to see Opheim's tax returns. Norfolk's counsel had filed the answer to Opheim's original complaint, and it filed the answer to the amended complaint. There appears to be no reason for refusing to allow Dealers' counsel to withdraw.

Norfolk urges that it was prejudiced, and states that it handed over to Dealers its "confidential file" on Opheim which Dealers' counsel had requested regarding "this occurrence." What Dealers actually received, and what has been rather ingeniously referred to by Norfolk as its "confidential file" was one which contained nothing regarding the accident which was the subject of the lawsuit. The letter accompanying the file points out, "You will note the enclosures relate to a prior accident." Norfolk now argues that the file contained valuable "negative" information; namely, that Norfolk did not have a good case against Dealers on its third-party complaint. We find no merit to this argument.

■ Dealers' indemnity agreement with Norfolk provides that it will indemnify Norfolk for all liability unless the liability was due to Norfolk's sole negligence. It remains to be determined whether the liability (if any) was due to Norfolk's sole negligence. If not, then regardless of any "negative" information, Dealers must indemnify; and if it was, under their own contractual arrangement, Dealers would not be required to indemnify. Consequently, the "negative" information was worth nothing.

Here we would like to bring up an extremely important aspect of this case. It does not involve an insurance contract with a provision whereby the insurance company agrees, among other things, to defend the insured in any and all actions which may be brought against it if such actions involve matters under policy coverage. The provision states only that Dealers, under specified conditions, agrees to indemnify Norfolk for

217

"all" liability. Dealers does not agree to assume the defense of actions brought against Norfolk. In most insurance cases cited to this court in the briefs of the instant appeal, the issue was whether an insurance company had waived its right to assert nonliability under a policy of insurance which it had issued to a particular insured. In each of those cases two factors exist which are absent in the case before us, and we feel that their absence is of critical importance.

■■■ First, as we have already pointed out, there is no express understanding in the instant case that the indemnitor would assume the defense of the indemnitee. Under their contract, if Norfolk was ultimately adjudged liable and it was determined that Norfolk was not solely negligent, then Dealers would have to indemnify Norfolk for its loss, including attorney's fees, a principle long established in Illinois law. This is quite different from saying, however, that with an agreement to indemnify, but with no agreement to defend, one is conclusively bound to defend once he enters a defense, and without any showing that the party for whom the defense was entered has been prejudiced. In other words, Dealers has the choice of either defending or not defending, but is bound by all that is determined in the principal suit, whether or not it conducts the defense personally. As the court said in Trego v. Rubovits, 178 Ill App 127, at pages 134–135,

> "We think also that the court applied the correct rule of measuring the damages recoverable. 'Where a person is responsible over to another, either by operation of law or by express contract, for whatever may be justly recovered in a suit against such other, and he is duly notified of the pendency of the suit and requested to take upon himself the defense of it, and is given an opportunity to do so, the judgment therein, if obtained without fraud

or collusion, will be conclusive in a subsequent suit against him for indemnity, whether he appeared in the former suit or not.' 24 Am & Eng Ency of Law (2nd Ed) 740; and also Drennan v. Bunn, 124 Ill 175. . . .

"The appellee was entitled to recover, if at all, for his legal attorneys' fees and costs expended in the defense of the suit against him. Westfield v. Mayo, 122 Mass 100; Mayor of Troy v. Troy & L. R. R. Co., 49 NY 657."

The second rather important distinction exists in the reason given as to why insurers wishing to assert non-liability under policies issued must do so without delay. In Krutsinger v. Illinois Cas. Co., 10 Ill2d 518, 139 NE2d 767, the court said at page 526:

"The reason is that '[t]he claim might be of such a character as that the amount of damages recovered in a lawsuit by the injured party would exceed the indemnity and subject the insured to considerable loss and damage, and therefore the insured should have a right to know with reasonable promptness the attitude of the indemnity company, so that he might be in a position to take such action as would not only protect the indemnity company, but save himself from loss and damages.' "

This passage is instructive because it points out that the courts are concerned with those situations where an insured has limited coverage and may therefore be harmed by a company's false start. Again, this condition is absent in the instant case. The agreement was that Dealers indemnify Norfolk "from any and all loss, damage, liability, cost or expense. . . ." Although the next clause indicates that Dealers had taken out insurance to cover its risk, the amount of coverage simply manifested its belief that such would be adequate pro-

219

tection. If, however, Norfolk's liability exceeded the limits of the insurance coverage Dealers had taken out, the difference would be Dealers' loss, for it had agreed to cover "all" loss. Since there was no ceiling on the amount of protection afforded Norfolk, the Krutsinger concern, as set out in the above quotation, is inapplicable to this case.

■ In Apex Mut. Ins. Co. v. Christner, 99 Ill App2d 153, 240 NE2d 742, this court recognized the insurer's perils in deciding whether or not to defend a particular action. At pages 163–164, the majority opinion explains:

> "Where the injury action complaint states different causes of action or theories of recovery, only some of which are covered by the policy, the insurer is bound to defend all those which are within the policy. . . . The penalty for failure to fulfill this duty is that any judgment entered is conclusive against it, absent fraud."

When the indemnitor knows of the peril but still chooses not to defend, then all that can be said is that the indemnitor, wisely or not, has selected its course. Whether or not it defends it has the same liability, but Norfolk is not entitled to demand that Dealers assume the defense. In a given case Dealers may feel it is in its best interest to assume the defense, but its agreement with Norfolk does not require that it do so; the question thus becomes: Has Dealers done something which should call for an alteration from the general rule and bind it to maintain Norfolk's defense?

A search of the record discloses nothing which justifies the conclusion that Norfolk was prejudiced by Dealers' assumption and subsequent withdrawal of Norfolk's defense. Virtually nothing of substance had transpired during the time the Hinshaw firm had control of the defense; the "confidential" file was valueless, not-

withstanding Norfolk's "negative" information argument. Dealers would have eventually learned the truth about the accident, whether from its own investigation or by discovery procedures against Norfolk, if Norfolk had maintained its third-party complaint against Dealers. For Norfolk to now argue that its useless file was valuable is to argue, in effect that it had obtained a windfall when Dealers had agreed to assume the defense; and that although Dealers learned the truth by seeing the empty file, Dealers should not now be allowed to profit from such knowledge. In other words, the value of the file was that it informed Dealers that Norfolk did not have a good case against Dealers, a fact which would inevitably have been disclosed.

Norfolk argues that the indemnitor contracted to assume the defense and therefore should not be allowed to withdraw at will. There can be no dispute that if one contracts to defend he should be held to the contract. Apex, supra, and many other cases so hold. The only problem with the argument as applied to this case is that there never was a contract to defend. We have already pointed out that in most insurance cases there does exist such a provision; however, in the present case there was no express provision whereby the indemnitor agreed to defend Norfolk from personal injury suits.

■ Norfolk argues that in the present case there was an oral contract evidenced by memoranda. This argument is weak at many points, not the least of which is that we fail to find any consideration for the purported agreement to defend. The argument that the consideration existed in Norfolk's withdrawal of its third-party complaint because of Dealers' assumption of the defense is not logical. Under its contract with Norfolk, Dealers agreed to indemnify Norfolk if Norfolk was adjudged liable and it was determined that Norfolk was not solely negligent. Thus, there was a preexisting obligation on the part of Dealers to pay for that which

221

Norfolk attempted to obtain by way of its third-party action. Furthermore, for the reasons already discussed, we fail to see how it can seriously be urged that the file given the Hinshaw firm had any value since its contents related to a prior accident.

■ The summary judgment ordered Dealers and its insurer to assume Norfolk's defense "and to indemnify said Railroad for any and all sums that said Railroad has paid or hereafter may be required to pay as a result of this litigation. . . ." As previously stated, we have concluded that Dealers and its insurer were entitled to withdraw from the defense since there was no showing that Norfolk would be thereby prejudiced. We also hold that error was committed when the summary judgment was entered ordering Dealers and its insurer to indemnify. It remains to be determined whether Dealers will be required to indemnify. There still has been no trial on Opheim's complaint and no determination as to whether the accident was due to Norfolk's sole negligence. If it was, under the agreement between Norfolk and Dealers, Dealers would not be bound to indemnify, and it thus appears premature to assess the duty of indemnification at this point.

Accordingly, we are reversing the judgment appealed from and remanding the cause with instructions to enter an order granting Dealers Transit, Inc., and Truck Insurance Exchange the right to withdraw from the defense of Norfolk & Western Railroad Company, and ordering that the determination of the issue of the duty to indemnify be postponed until judgment has been rendered in the Opheim suit against Norfolk. The dismissal of the third-party defendants named in the order appealed from may stand.

Reversed and remanded with instructions.

LYONS, J., concurs.

BURKE, J., dissents:

At the time Dealers agreed to defend the Opheim suit it was not discharging a prior contractual obligation; it was assuming an entirely new obligation, in exchange for which it was spared the risks of being made a third-party defendant in the suit. The fact that Opheim's complaint did not name Dealers as a defendant does not mean that Dealers would not ultimately have to indemnify the railroad, and the fact that the hold-harmless clause excepted liability arising out of the "sole negligence" of the railroad, does not mean that Dealers might not ultimately have to indemnify the railroad if Opheim took a judgment against it. Forbearance to sue may constitute the consideration necessary to support an agreement, even if the claim upon which suit is threatened is doubtful. Dealers received the benefit of having full control of the litigation and the right to Norfolk's full cooperation in the defense. Dealers and Truck Insurance Exchange do not deny that the railroad performed its part of the agreement. Dealers and Truck Insurance Exchange will not be permitted to back away from performing their part of the agreement.

The record does not support appellants' alternative argument that they contracted to assume the railroad's defense because they misunderstood the law. Opheim was an employee of Dealers and by virtue of section 5(a) of the Workmen's Compensation Act (Ill Rev Stats 1969, c 48, § 138.5) he was barred from asserting any common-law action against his employer to recover for his injuries. It is reasonable to assume that Dealers, as the employer, Truck Insurance Exchange, et al., as its liability carrier and Joseph Reynolds as Truck Insurance Exchange's branch claim manager, were aware of that fact. There is nothing in the record suggesting that railroad's counsel misunderstood the complaint or that he misrepresented what it contained. He sent copies

223

of the complaint to Dealers which made its independent decision more than a month later. The record shows that counsel for the railroad was aware of the provision of the Workmen's Compensation Act preventing Opheim from naming his employer in the complaint, and equally aware that Norfolk could file a third-party complaint against Dealers.

Dealers, through its agent, Truck Insurance Exchange, for a sufficient consideration for its promise, entered into a valid contract to defend the railroad. Pursuant to the agreement, the railroad dismissed its third-party complaint, surrendered control of the defense to Dealers' counsel and gave its full cooperation. There is no evidence of misrepresentation or mistake. Whether the railroad was prejudiced by Dealers' subsequent breach of the contract is irrelevant. Dealers has refused to perform and that alone constitutes a breach. For these reasons the judgment should be affirmed.