George L. Shapiro and Angelo A. Ciambrone, Plaintiffs-Appellees, v. Norman DiGuilio, American Indemnity Company, and Idlewild Country Club, an Illinois Corporation, Defendants,

and

Norman DiGuilio, Cross-Plaintiff-Appellee, v. American Indemnity Company and Idlewild Country Club, an Illinois Corporation, Cross-Defendants.

Appeal of American Indemnity Company, Defendant-Appellant and Cross-Defendant-Appellant.

Gen. No. 51,067.

First District.

May 1, 1968.

Berchem, Schwantes & Thuma, of Chicago (Michael J. Thuma and James O. Latturner, of counsel), for appellant.

Angelo A. Ciambrone, George L. Shapiro, pro se, and John G. Phillips, of Chicago (Sidney Z. Karasik, of counsel), for appellees.

MR. JUSTICE CRAVEN delivered the opinion of the court.

This is an appeal by American Indemnity Company from a summary judgment entered against it in the circuit court of Cook County in favor of Norman DiGuilio for $72,500, costs and interest, ordering DiGuilio to pay to George L. Shapiro the sum of $500 as guardian ad litem and to Angelo A. Ciambrone the sum of $1,500 as attorney for DiGuilio. The judgment also found that American Indemnity was obligated to defend Raymond Lambotte in the prior underlying personal injury suit brought against him by DiGuilio in which the judgment for $72,-500, costs and interest was entered in favor of DiGuilio.

Appeal also is taken by American Indemnity from an order of the trial court striking portions of its answer as-

serting an affirmative defense of collusion in the personal injury action which relieved it of the obligation to defend, and from the liability of the judgment obtained.

This action arose from a prior underlying action brought in the city court of Chicago Heights against Raymond Lambotte and Idlewild Country Club by Norman DiGuilio, a caddy at the Idlewild Country Club golf course, for loss and removal of his eye, allegedly caused by an apple thrown by Raymond Lambotte, another caddy at the club. Both DiGuilio and Lambotte were minors, aged sixteen years. At the time of the occurrence, Idlewild was insured by a liability policy of American Indemnity Company. American Indemnity provided defense on behalf of Idlewild but refused to defend Lambotte, contending that its policy did not cover club employees in tort actions against the employees.

In the personal injury action, the court appointed Shapiro as guardian ad litem for the minor defendant, Lambotte, and the guardian ad litem retained Ciambrone as attorney.

Idlewild filed an answer and an affirmative defense that plaintiff DiGuilio was a coemployee of defendant, Lambotte, and the action was barred by the Workmen's Compensation Act. The guardian ad litem filed an answer but did not raise a similar defense. He tendered Lambotte's defense to American Indemnity who refused it.

Thereafter, the personal injury cause was transferred to the circuit court of Cook County. Motion for summary judgment was made on behalf of the Country Club. Motion by plaintiff was made for summary judgment on the issue of liability of Lambotte. The motion judge denied summary judgment for the Country Club on the ground that the relationship of plaintiff and defendant presented a disputed question of fact. No counteraffidavit or oral argument was presented in opposition to plain-

tiff's motion for summary judgment. The court then entered judgment against Lambotte on the issue of liability and reserved only the issue of damages.

On the trial call, Idlewild announced ready for trial but plaintiff's counsel stated that he was not ready to proceed as to Idlewild. The assignment judge, on trial call, then dismissed the case against Idlewild for want of prosecution.

Later, the issue of damages as to Lambotte was assigned for trial. The court heard evidence and entered judgment for DiGuilio against Lambotte for $72,500. This judgment contained a finding that DiGuilio was an independent contractor with the Country Club and not an employee, but that Lambotte was an employee at the time of the occurrence. The judgment also directed that the guardian ad litem be paid $500 and his attorney $1,500 for their services. No appeal was taken from this order and judgment entered January 14, 1965.

Thereafter, Shapiro, guardian ad litem for the minor defendant, Lambotte, and his attorney, Ciambrone, filed this action in chancery to impose a trust or lien upon the proceeds of the insurance policy of American Indemnity and for an order on the company to pay, on behalf of Lambotte, to DiGuilio the judgment of $72,500, and out of it the guardian ad litem fee of $500 and his attorney's fee of $1,500. This suit also sought an injunction restraining DiGuilio from collecting his judgment until plaintiff's rights were declared, and to impose a lien on the insurance policy and declare that American Indemnity Company was obligated to defend Lambotte in the personal injury suit and had breached its duties by failure to do so.

DiGuilio filed a cross-complaint praying that a lien be imposed on the proceeds of the insurance policy for payment of his judgment and that the court declare the American Indemnity Company obligated to defend Lambotte in the principal suit.

187

American Indemnity and Idlewild filed pleadings, in the instant case, to the complaint and American Indemnity to the cross-complaint, setting up an affirmative defense of collusion between DiGuilio and Lambotte, alleging that Lambotte had failed to present a "bona fide" defense and denying insurance coverage. The court entered an order striking the affirmative defense. Thereafter, on October 20, 1965, the court entered the judgment here appealed from, finding that the insurance policy issued by American Indemnity Company constituted a fund for and is impressed with an equitable lien to satisfy the judgment of $72,500 in favor of DiGuilio against Lambotte; allowed summary judgment in favor of DiGuilio against American Indemnity Company for $72,500 and interest; and ordered DiGuilio to pay the fees of the guardian ad litem, Shapiro, and his attorney, Ciambrone, from such sum. The judgment order also found that American was obligated by its policy to defend Lambotte and that its failure so to do constituted a breach of its policy.

After the judgment of October 20, 1965 was entered and on October 25, 1965, prior to the filing of the notice of appeal, a written order was entered dismissing the action as against Idlewild. Thereafter, the notice of appeal was filed on November 8, 1965. DiGuilio filed a motion to dismiss this appeal on the ground that the order of October 20, 1965, did not contain an express finding that there was no just reason for delaying enforcement or appeal as required by section 50(2) of the Civil Practice Act (Ill Rev Stats 1965, c 110, § 50(2)). This court denied such motion.

■■ Cross-plaintiff, DiGuilio, on appeal, again urges that the judgment appealed from is not appealable since multiple parties were involved and the order appealed from did not dispose of the case as to Idlewild. He also suggests that subsequent to the filing of the notice of appeal, he filed a petition under section 72 of the Civil

Practice Act to vacate the dismissal of Idlewild and for leave to file an amended complaint, and that the court vacated the order of dismissal and continued the motion to file an amended complaint. He urges that a decision of the instant appeal may be rendered moot by subsequent developments in the trial court. No lengthy discussion is required on this matter, as the judgment and record is reviewable from the date the notice of appeal is filed. Under section 76 of the Civil Practice Act, "an appeal is perfected when the notice of appeal is filed in the lower court. . . ." (Ill Rev Stats 1965, c 110, § 76 (2).) A reviewing court reviews only questions existing at the time of filing of the notice of appeal. Brehm v. Piotrowski, 409 Ill 87, 98 NE2d 725 (1961); Butler v. Palm, 36 Ill App2d 351, 184 NE2d 633 (2d Dist 1962). A review of the record discloses that at the time of the filing of the appeal herein, all of the issues of the case as against all of the parties were fully disposed of and relief had been granted on all of the prayers for relief in both the complaint and cross-complaint. In the state of this record at the time of the filing of the notice of appeal, the order of October 20, 1965, was final and appealable. The actions in the trial court subsequent to filing of the notice of appeal are not before this court on this appeal.

The action here on appeal is an action on the chancery side of the court. There was asserted in it an affirmative defense that the underlying judgment at law in the personal injury case had been obtained by collusion between the plaintiff and the individual defendant.

■ ■ The defense, if proven, was one which would have defeated the instant action. A judgment obtained by collusion or fraud is open to attack whenever and wherever it is sought to be enforced, even in a collateral proceeding. Freeman, Judgments, § 318. 1 Black, Judgments, § 293. Our court has consistently held that when a judgment is procured through fraud and collusion for the purpose of defrauding some third person, the third per-

son may show the fraud and collusion collaterally and escape the burdens and injuries thus thrust upon him. Green v. Hutsonville School Dist., 356 Ill 216, 190 NE 267 (1934); Wing v. Little, 267 Ill 20, 107 NE 875 (1915); Elting v. First Nat. Bank, 173 Ill 368, 50 NE 1095 (1898). Upon hearing and considering this defense, the court, if it found the allegations proven, could have dismissed the action as being without equity.

The underlying question, however, which is determinative of all the issues and complained errors, is whether the policy issued by American Indemnity covered the liability of Raymond Lambotte to Norman DiGuilio since the judgment obtained was not against Idlewild Country Club, but against Lambotte. The question of the liability of Idlewild has not been adjudicated and is not before this court in this proceeding. To determine this underlying question, we must consider the terms of the policy in accordance with applicable rules of construction.

The provisions of the policy concerned are:

Under the heading of "Insuring Agreements":

> "I Coverage A—Bodily Injury Liability. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, . . . ."

The definition of "insured" as used in the policy:

> "III Definition of Insured. The unqualified word 'insured' includes the named insured and also includes (1) under coverages A and C, . . . any executive officer, director or stockholder thereof while acting within the scope of his duties as such, . . . ."

The declarations show:

> "Name of Insured *IDLEWILD COUNTRY CLUB* . . . [and] The named insured is *CORPORATION* . . . ." (The underlined [italicized] portions are

190

those portions which were filled in on the insurance policy form.)

Certain other provisions of the policy specify how the premium of the policy would be determined and contain a series of definitions regarding items that may be used as a premium basis. Included among such definitions are:

" . . . When used as a premium basis:

. . . . . .

"(7) the words 'Class 1 persons' mean the following persons, provided their usual duties in the business of the named insured include the use of nonowned automobiles: (a) all employees, including officers, of the named insured compensated for the use of such automobiles by salary, commission, terms of employment, or specific operating allowance of any sort; (b) all direct agents and representatives of the named insured;

"(8) the words 'Class 2 Employees' mean all employees, including officers, of the named insured, not included in Class 1 persons. . . ."

The policy provided for an advance premium on an estimated basis, with the earned premium computed according to the rules, rating plan, premiums and minimum premiums applicable and later adjusted. Schedule 1 shows that the basis for computing the advance premium was on the premises—operations covered as "Idlewild Country Club, Flossmoor, Illinois, Country Club—Main Bldg., Dormitory—Servants' Quarters, Caddy Shop, Garage, Barn and all small buildings on premises, excess of 5 acres, swimming pool."

While plaintiffs and cross-plaintiff contend that the definition of "Class 2 employees" extends the policy coverage to employees as "Insured" under the policy, this provision is only a definition and is not used any-

191

where else in the policy. It is not even used as a basis for determination of the premium. However, even if it were so used, such use would not extend coverage to them. Webster v. Inland Supply Co., 287 Ill App 567, 5 NE2d 849 (1st Dist 1936) ; MacLellan v. Liberty Mut. Ins. Co., 346 Mass 415, 193 NE2d 577.

 The provisions of the policy in question are clear and unambiguous as to who is insured. Lambotte, as an employee of Idlewild, was not an insured within the policy definition. While it is admitted that a corporation is only a legal entity and can act only through a person, this does not mean that insurance covering the corporation a fortiori covers its employees. Also, while a corporation is at times liable for its employees' torts, it is not liable for all such torts. No judgment was obtained here against the corporation. American Indemnity, therefore, is not liable on its policy here in issue nor was it under any duty to defend Lambotte, since the defense required under the policy was to "defend any suit against the insured." The suit against Lambotte was not a "suit against the insured." No basis exists in the plain language of the policy to extend the meaning therein set forth of "insured" to include Lambotte. There being no duty on American Indemnity to defend Lambotte in the underlying personal injury suit and no liability on the judgment against him, the judgment order of the circuit court was erroneous and should be reversed and remanded with directions to enter a judgment for American Indemnity Company.

Judgment reversed and remanded with directions.

SMITH, P. J. and TRAPP, J., concur.