GEORGE L. SHAPIRO *et al.*, Plaintiffs-Appellees, *v.* NORMAN DI GUILIO *et al.*, Defendants,—(NORMAN DI GUILIO, Cross-Plaintiff-Appellee, *v.* AMERICAN INDEMNITY COMPANY *et al.*, Cross-Defendants—APPEAL OF IDLEWILD COUNTRY CLUB, Defendant-Appellant and Cross-Defendant-Appellant.)

(No. 53641;

First District—April 8, 1971.

Berchem, Schwantes & Thuma and Librizzi & Dunn, both of Chicago, (James O. Latturner and Michael A. Dunn, of counsel,) for appellant.

John G. Phillips, of Chicago, and Angelo A. Ciambrone, of Chicago Heights, (Ellis B. Rosenzweig, of counsel,) for appellees.

Mr. JUSTICE TRAPP delivered the opinion of the court:

The trial court granted the petition of Norman Di Guilio made pursuant to Section 72 of the Civil Practice Act to vacate an order, dated October 26, 1965, which order dismissed a suit against Idlewild Country Club, a co-defendant, for want of prosecution. Idlewild appeals from the order dated June 22, 1966, vacating such dismissal.

Another aspect of this litigation appears in *George L. Shapiro, et al. v. Norman Di Guilio, American Indemnity Company and Idlewild Country Club* (1st Dist. 1968), 95 Ill.App.2d 184; 237 N.E.2d 771.

A consideration of the history of this litigation is necessary. Norman Di Guilio, a 16 year old minor, a caddy at Idlewild Country Club on July 16, 1958, was struck in the eye by an apple allegedly thrown by another caddy also a minor, and suffered the loss of the eye. Di Guilio filed suit against the other caddy, Raymond Lambotte, and Idlewild Country Club. Idlewild answered the complaint denying the material allegations and alleging affirmatively that both plaintiff and defendant caddies were employees, were subject to and bound by the Workmen's Compensation Act and that Idlewild provided insurance to cover its workmen's compensation liability.

George Shapiro was appointed guardian *ad litem* for defendant, Lambotte, and in turn employed Angelo Ciambrone as his attorney to defend Lambotte. Attorney Ciambrone advised the attorneys for Idlewild and its insurer, American Indemnity Company, that he understood they were asserting the defense of employment relationship between Idlewild and the plaintiff, Di Guilio, that he assumed that Lambotte was therefore likewise an employee for whose actions Idlewild would be responsible and tendered the defense of Lambotte to Idlewild. The tender of defense was refused.

Di Guilio moved for summary judgment against Lambotte but no counter-affidavit was filed on the latter's behalf. Idlewild moved for summary judgment as to it. On January 7, 1965, the trial court entered a summary judgment against Lambotte on liability, leaving only the question of damages. The trial court found that Idlewild's motion for summary judgment presented a question of fact as to the relationship between plaintiff Di Guilio and defendant Idlewild, and denied the motion. On January 11, 1965, the matter came on the regular trial call and plaintiff's counsel announced that he was not ready to proceed to trial as to Idlewild. The tort action was dismissed for want of prosecution as to Idlewild only.

On January 14, 1965, the trial court entered a judgment in favor of Di Guilio against Lambotte for $72,500, and added findings that Di Guilio was an independent contractor and not an employee of Idlewild on July 16, 1958, whereas Lambotte was an employee of Idlewild on said date. On the same date the trial court ordered the plaintiff to pay $500 to the guardian *ad litem* for the defendant, and $1,500 to his attorney.

Three different judges entered respectively Di Guilio's motion for summary judgment, an order assessing damages and the order dismissing the case for want of prosecution against Idlewild.

On March 1, 1965, George Shapiro, the guardian *ad litem* for defendant Lambotte, and Angelo Ciambrone, his attorney, brought a complaint in chancery against Di Guilio, plaintiff in the tort action, Idlewild Country Club and its insurer, American Indemnity Company, alleging that the insurance company owed a defense to defendant Lambotte, and covered him as to liability under the policy. The complaint specifically prayed, (a) that a trust or lien be imposed on the proceeds of an insurance policy of American Indemnity Company for the use of Idlewild Country Club, (b) that American Indemnity Company be ordered to pay the sum of $72,500 on behalf of Lambotte to Norman Di Guilio and out of said proceeds the sum of $500 be paid to the guardian *ad litem* and $1,500 to his attorney, (c) that the court restrain Di Guilio from proceeding against Lambotte until his rights were adjudicated and a lien imposed upon the insurance policy, and (d) that the court decree that American Indemnity Company had breached its duty in failing to defend Lambotte. There was also a prayer for general relief.

American Indemnity Company answered denying coverage for, or on behalf, of any employees of Idlewild, alleging that no *bona fide* defense was made for Lambotte, alleging on information and belief that the judgment aginst Lambotte was entered on the agreement of the attorney for the plaintiff, Di Guilio, and the attorney for the defendant, Lambotte.

Idlewild answered the complaint alleging that Di Guilio filed a complaint before the Industrial Commission of the State of Illinois which is pending and undetermined, alleging that plaintiff, Di Guilio, was an employee of Idlewild while a caddy and that Lambotte was likewise an employee, denying coverage by its policy with American Indemnity Company, alleging coverage of the situation by the Workmen's Compensation Act and Idlewild's insurance procured in respect thereto, and alleging that no defense was made for Lambotte in the suit by Di Guilio.

Di Guilio answered the complaint and also filed a cross-complaint in which he prayed specifically, (a) that a lien be impressed upon the proceeds of the American Indemnity Company insurance policy, (b)

that the court declare that American Indemnity breached its duty in its failure to defend Lambotte. Idlewild answered the cross-complaint denying that its American Indemnity Company policy provided coverage, and alleging that it had Workmen's Compensation insurance coverage, and alleging that Di Guilio was an employee of Idlewild at the time of his injury.

The trial court struck the defense of collusion in entry of the tort judgment and entered a summary judgment on October 20, 1965, in favor of Di Guilio against American Indemnity Company for $72,500, and ordered that Di Guilio pay $500 to the guardian *ad litem* and $1,500 to his attorney therefrom. The court also found that American Indemnity breached its policy by failing to defend Lambotte.

In answer to an inquiry as to the disposition against Idlewild counsel for Di Guilio stated:

"There was nothing in my argument yesterday about impressing the judgment, or extending the judgment to Idlewild. In fact, I was very specific and indicated it suffices if we get the summary judgment against the insurance company, because they would be the source of funds with which to pay the Di Guilio judgment * * * . By their own admission, if they have a duty to defend the employees of the Idlewild Country Club, and if the policy of insurance is a source of funds with which to pay any judgment against the individual defendant, or the employee of the Idlewild Country Club, then it doesn't make any difference whether the Idlewild Country Club does have a judgment against it or not, because all that is involved in this proceeding, as I explained yesterday, is simply whether or not this insurance company should pay the judgment against the individual defendant, Lambotte, and whether the insurance company should have undertaken the defense of Lambotte * * * . There is one matter— there isn't any other matter in this case that should be decided by this Court or anybody else. There is only the question whether the policy should pay for the judgment, and I don't see any possibility of any misunderstanding that can be had in connection with that."

Thereafter, on October 25, 1965, the matter came on again for the trial call as to the remainder of the case, (the claim against Idlewild.) The Chicago Daily Law Bulletin announced the case for 2:00 P.M. in Room 911, County Building for October 25, 1965. This announcement appeared in the bulletin on October 20, October 21 and October 22, 1965. Plaintiffs, the guardian *ad litem*, his attorney and the counsel for the tort plaintiff, Di Guilio, all failed to appear. The cause was dismissed for want of prosecution.

In the motion under Section 72 of the Civil Practice Act, it is alleged that the Clerk did not mail notice of the fact of dismissal, and a representative of the Clerk's office testified that there is no record of the mailing. Counsel for Idlewild assert that they received notice of the order from the Clerk.

On the previous appeal of American Indemnity Company from the summary judgment against it, the appellant on May 31, 1966, moved to supplement the record on appeal to show that the suit against Idlewild had been dismissed for want of prosecution. Appellees contend that this was the first notice that they had that the suit against Idlewild had been dismissed for want of prosecution. Appellees assert that settlement negotiations took place over a period of several months with no mention of this dismissal. Appellants allege one specific occasion on April 19, 1966, when they say the dismissal was mentioned to counsel for Di Guilio. The motion to vacate under Section 72 was filed June 15, 1966.

This court, in *Shapiro v. Di Guilio, et al.*, 95 Ill.App.2d 184; 237 N.E.2d 717, being the appeal of American Indemnity Company from the summary judgment against it in the chancery suit, held that the insurance company had a right to assert the defense of collusion in obtaining the original judgment of Di Guilio against Lambotte, but also held that the controlling question whether the liability policy of American Indemnity covered defense of suit and payment of claims in suits directly against employees of its insured should be decided adversely to the plaintiffs. The summary judgment was reversed. Accordingly, the proceeds of the insurance policy did not stand as a fund to pay a judgment against the employee.

It should be made clear what issues the original plaintiff, Di Guilio, and the original defendant, Lambotte, through his guardian *ad litem,* and the guardian's attorney, seek to have tried. The complaint in equity prayed for specific relief all directed at impressing a lien on insurance proceeds, payment of fees and enjoining execution against Lambotte until the lien could be made effective. All of this relief was obtained in the judgment against American Indemnity Company except the injunctive relief sought which was apparently considered unnecessary because of the imposition of the lien.

In order to have obtained a judgment against Idlewild Country Club, the original plaintiffs and individual defendant would have had to go to trial on the basic issues of the original tort action. As against the repeated allegation of the employment relationship between Di Guilio and Idlewild and other issues in respect to which Idlewild was in no way bound by the suit of Di Guilio against Lambotte, there could have been no extension of the judgment against Lambotte to make Idlewild a

judgment debtor. Nor was there any prayer for such relief in the chancery complaint. The motion for relief under Section 72 seeks to reinstate all undisposed of causes but in fact there were no undisposed of causes in respect to Idlewild Country Club in the chancery suit. We note that petitioner, Di Guilio, in the Section 72 petition seeks leave to file an amended cross-complaint, and for the first time prays "that the judgments heretofore entered be extended and entered against the Idlewild Country Club". We also note that the guardian *ad litem*, Shapiro, and his attorney, Ciambrone, did not file a petition for relief under Section 72 of the Civil Practice Act.

There can be nothing which petitioner seeks to try except the issue of liability of Idlewild, which was contained in the original suit of Di Guilio against Lambotte and Idlewild in 1959. As it clearly appears, petitioner, Di Guilio, determined not to go to trial on the issues against Idlewild in the original suit, and that suit was dismissed for want of prosecution against Idlewild on January 11, 1965. Even if the guardian *ad litem* and his attorney, as representatives of Lambotte, could be considered proper petitioners herein, no relief could be obtained against Idlewild without trial of the original issues it sought to have litigated in the original tort suit of Di Guilio.

■■ We, therefore, view the petition of Di Guilio under Section 72 of the Civil Practice Act as an attempt to reinstate the original tort suit against Idlewild Country Club rather than as an attempt to reinstate the chancery suit against Idlewild. Appellant very properly states that all issues which the petitioner could have litigated in the chancery suit, and which the guardian *ad litem* could have litigated, have been litigated, and if there were any others (which were not contained in the prayer for relief in the chancery complaint or cross-complaint) which plaintiff and cross-plaintiff refused to prosecute, they are *res judicata*. (*Webb v. Gilbert*, 357 Ill. 340; 192 N.E. 252; *Pratt v. Baker*, 79 Ill.App.2d 479; 223 N.E.2d 865; *Jones v. Reuss*, 47 Ill.App.2d 212, 197 N.E.2d 709 and *Setliff v. Reinbold*, 73 Ill.App.2d 209; 218 N.E.2d 814.) We agree that the deliberate refusal of plaintiff to proceed against Idlewild in both the tort suit and the chancery suit militates against relief under Section 72 of the Civil Practice Act. (*Calabrese v. Hatlen Heights Sewer & Water Co.*, 61 Ill.App.2d 434; 209 N.E.2d 855, appeal dismissed 34 Ill.2d 483; 216 N.E.2d 145. *Scofield v. Behm*, 89 Ill.App.2d 224; 232 N.E.2d 64.) We also agree that the chancery suit was completely disposed of on its merits. A petitioner under Section 72 of the Civil Practice Act is required to show a meritorious claim.

There are no allegations which, if established would create a duty on Idlewild, the employer of Lambotte, to defend him or indemnify him,

*Stawasz v. Aetna Ins. Co.*, 99 Ill.App.2d 131; 240 N.E.2d 702; *Embree v. DeKalb Forge Co.*, 49 Ill.App.2d 85; 199 N.E.2d 250 and *Holcomb v. Flavin*, 37 Ill.App.2d 359; 185 N.E.2d 716.

Finally, no amended complaint showing any claim which was not previously disposed of was presented to the trial court. Only by establishment of direct liability of Idlewild to Di Guilio could the relief really sought be obtained, and this was the issue abandoned in the original tort suit. Properly speaking, this issue does not even belong in the chancery suit, and if it were proper to revive it, it would be by reviving the original law suit with all defenses available to Idlewild. This would not be an issue between Lambotte and Idlewild.

We have quoted the statement of counsel with reference to the failure to pursue any relief against Idlewild Country Club in the chancery suit because in fact what counsel said was correct, all issues sought to be resolved by that proceeding had been resolved so that there is nothing to reopen.

■■ Should we consider the petition to involve the narrow issue of reinstatement of the chancery complaint against Idlewild Country Club, we would agree with appellant that Section 72 of the Civil Practice Act was not designed to allow a party to litigate issues which the party has intentionally abandoned. *Calabrese v. Hatlen Heights Sewer & Water Co.*, 61 Ill.App.2d 434; 209 N.E.2d 855; *Scofield v. Behm*, 89 Ill. App.2d 224; 232 N.E.2d 64.

■■ As to the issue of diligence on the part of petitioner, the Illinois Courts have previously held that the failure of the clerk to send notice of dismissal does not excuse the failure to follow the case. (*Esczuk v. Chicago Transit Authority*, 39 Ill.2d 464; 236 N.E.2d 719; *Fennema v. Vander Aa*, 42 Ill.2d 309; 247 N.E.2d 409.) This is especially true where notice was given in the Chicago Daily Law Bulletin.

Counsel for Di Guilio, in their brief, state that Di Guilio's countercomplaint against Idlewild states a good cause of action. Examination of Di Guilio's cross-complaint reveals that while Idlewild Country Club is a named defendant, no judgment against Idlewild is sought and no facts are stated on which a judgment against Idlewild could be predicated.

Counsel for the guardian *ad litem* state that Idlewild raises only three issues insofar as the guardian is concerned, to-wit: that the guardian participated in a fraud in entry of the judgment against Lambotte, that Di Guilio was improperly ordered to pay fees of the guardian and his attorney, and the guardian did not file an independent motion to vacate the dismissal order. The guardian likewise misses the point that the

guardian's suit named Idlewild a defendant but sought no relief against Idlewild and stated no cause of action against Idlewild.

As we view it, Idlewild Country Club has been held in litigation for 11 years, has twice been brought to trial with assertion of basic defenses to claims against it, which the adversary declined to try. Now all efforts to circumvent the trial of the original issues on the merits having failed, and two suits against Idlewild having been dismissed for want of prosecution, plaintiff seeks to revive the original tort complaint which he abandoned 6 years after the accident.

The trial court erred in allowing the motion to vacate the order of October 26, 1965, dismissing the chancery suit for want of prosecution.

Judgment reversed.

SMITH, P. J., and CRAVEN, J., concur.