GALE L. MARCUS AND MARCUS & ORR, Plaintiffs-Appellants, *v.* JAMES B. WILSON *et al.*, Defendants-Appellees.

(No. 57380;

First District (3rd Division)—December 27, 1973.

James C. Kellogg and Gale L. Marcus, of Chicago, for appellants.

Schwartz, Cooper, Kolb & Gaynor, Chartered, of Chicago (Narcisse A. Brown and Martin W. Salzman, of counsel), for appellees.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Plaintiffs filed this action in the circuit court of Cook County to recover damages sustained as a result of the alleged interference by the defendant-attorneys with an agreement and attorney-client relationship between plaintiffs and the other defendants. The trial court, sitting without a jury, held that, although plaintiffs may have been damaged, defendants were not responsible. On appeal plaintiffs' primary contention is that the court erred in determining that defendants were not liable for the damages which plaintiffs sustained. They also argue that the court improperly permitted defendants to raise affirmative defenses not raised in their pleadings; that the court improperly permitted the introduction of certain evidence; and that the court erroneously denied plaintiffs' motion to file an amended complaint to conform to the proof at trial.

Plaintiffs' complaint alleged that, pursuant to a request by James B. Wilson, they performed legal services for Wilson, Charles Elias, Paul Westfall and Shalcross Corporation. Wilson stated that either he or Shalcross would be responsible for the payment of fees. Wilson owned ninety percent of the stock in Shalcross, while Westfall and Elias, the corporation's only officers, each owned five percent.

The complaint further alleged that Wilson owed plaintiffs more than ten thousand dollars for their legal services. Wilson, as Shalcross' agent, delivered a note for fifteen thousand dollars to plaintiffs payable to the Hartford Plaza Bank. The note was signed on its face by Wilson and John J. Vitacco and endorsed "without recourse" on the reverse side by Hartford to Shalcross. The complaint also recited that, when delivering the note to them, Wilson directed plaintiffs to file suit against Vitacco, stating that he had the authority to so direct them. Plaintiffs were to receive the entire proceeds of the note as compensation for past services and for fees incurred in the collection of the note. Plaintiffs confessed judgment on the note and, as attorneys for Shalcross, filed garnishment proceedings against two banks holding Vitacco's funds. The complaint further alleged that, without notice to or permission from plaintiffs, defendants executed a satisfaction reciting that Shalcross had received full payment and releasing the judgment against Vitacco. The satisfaction was signed by Westfall and Shalcross.

Plaintiffs' complaint charged that Westfall, Elias, and Wilson, individually and as agents for Shalcross, and Malcolm Gaynor, individually and as an agent for the defendant law firm, fraudulently conspired to deprive plaintiffs of their rights to the proceeds of the judgment on the note. Plaintiffs also charged that, notwithstanding plaintiffs' agreement with the other defendants, Malcolm Gaynor, individually and as an agent for the defendant law firm, and Vitacco fraudulently induced the other

defendants to breach their agreement with plaintiffs and destroy their lien rights by inducing those defendants to execute and file a satisfaction without paying the funds to plaintiffs.

Malcolm Gaynor and the defendant law firm filed an answer to the complaint in which they denied that Wilson directed plaintiffs to file suit on the note against Vitacco. The answer denied that plaintiffs were authorized to act as attorneys for Shalcross, but admitted plaintiffs were attorneys of record for Shalcross in the suit. The answer further denied that defendants executed the satisfaction and stated that plaintiffs' permission was not required to file the satisfaction.

John Vitacco filed an answer setting forth the same defenses as the defendant-attorneys. Vitacco further stated that his obligaion and liability on the note were extinguished upon the payment by Wilson to the holder at maturity.

Wilson, Westfall, Elias, and Shalcross were all dismissed as defendants. The cause proceeded to trial against Vitacco, Gaynor, and the law firm of Schwartz, Cooper, Kolb and Cohen. Upon the death of Schwartz, his estate was substituted as defendant.

At trial plaintiffs called six witnesses. Doctor John Vitacco, called as an adverse witness, testified that he knew Wilson only slightly as a result of a federal case in which they were both involved. Vitacco knew Sam Mercurio and was involved with him in several business ventures, including a savings and loan association. Vitacco acknowledged co-signing the note with Wilson but could not remember when.

In 1966 Vitacco retained the defendant law firm to help him with some financial difficulties. This occurred prior to the confession of the instant note. Vitacco, upon receiving a written demand for payment of the note from plaintiffs, sent Sam Mercurio the demand and asked him to take care of it. Vitacco also referred the notice of garnishment proceedings to Mercurio. Vitacco further testified that he did not recall paying $16,965.26 and costs to Shalcross, as stated in the satisfaction.

Malcolm Gaynor, also called as an adverse witness, testified that he was employed by the defendant law firm, a firm specializing in financial problems. Gaynor did not recall seeing plaintiffs' names on any notices in connection with the confession suit. The first time he saw the court file was after the execution had been executed. Gaynor testified that he prepared the satisfaction which was executed by Westfall, the secretary-treasurer of Shalcross. The first time Gaynor met Westfall was the morning the satisfaction was signed. Gaynor stated that eventually he sent a copy of the satisfaction to plaintiffs. Gaynor testified that he believed the note was paid before he prepared the satisfaction because he was so advised by the Hartford Bank.

Gaynor, in a portion of a deposition which was introduced into evidence, stated that Schwartz, the firm's senior partner, had stated that he had a conversation with the attorneys for the judgment-creditors before the matter was assigned to Gaynor. Gaynor also stated that Vitacco told him that Westfall would execute the satisfaction.

Charles Elias, president of Shalcross, testified that Wilson treated the corporation as his own and had corporate checks issued for his personal obligations. Elias testified that plaintiffs represented Shalcross, Wilson, Westfall, himself, and others. Elias did not authorize plaintiffs to file suit on the note, although he delivered the note to plaintiffs. Elias was unaware of the satisfaction at the time it was executed, and he testified that there had been no corporate resolution authorizing it. Elias also testified that Shalcross was out of existence and that Wilson was in the penitentiary.

Wallace Orr, a partner in the plaintiff law firm, testified that he had done the majority of the work in the transaction. Orr requested security for the fees, which were becoming substantial, and Wilson offered him the note. When Orr inquired as to how he could be sure the note had any value, Wilson sent him a financial report on Vitacco.

In December, 1965, Wilson told Orr to confess judgment on the note. When Orr sent a demand letter to Vitacco, the latter referred him to his attorney, Joseph Schwartz. Schwartz asked Orr to hold off on the note. When nothing was accomplished, Orr confessed judgment on the note in June, 1966.

Gale Marcus, one of the plaintiffs, testified that his firm had received an initial retainer from Wilson for the work to be done for Wilson, Westfall, Elias, and Shalcross Corporation. The billing for legal services was done through the corporation for tax reasons. Plaintiffs received the note as security for the payment of these services when the amount reached $10,000.

Lawrence W. Northrup, president of the Hartford Plaza Bank, testified that the bank lent Wilson $15,000 only after the latter secured Vitacco as co-signer of the note. Northrup, present at the execution of the note, also testified that it was impossible to determine from the face of the note that the relationship of the parties was other than lender and borrower with two parties co-signing as borrowers. The proceeds of the loan were credited to Wilson's account at the bank. The original note was renewed and finally paid by Wilson. At the time of payment Northrup acceded to Wilson's request to endorse the note to Shalcross rather than mark the note paid. Northrup testified: "I was glad to get the note paid and I wasn't particular how it was done." Northrup agreed that the foregoing did not constitute normal banking practice.

Malcolm Gaynor, a defendant, testified that he was contacted by Vitacco and Mercurio in July, 1966. Gaynor was told that Vitacco had co-signed as an accommodation and had not received any proceeds. Gaynor also was informed by Northrup that the loan had been made to Wilson after Vitacco co-signed it, that Vitacco had received none of the proceeds, and that Wilson, after paying the note, had asked that the note be assigned to Shalcross. Westfall told Gaynor that plaintiffs did not have authority to confess judgment on the note.

Gaynor acknowledged that he had sent notice of the filing of the satisfaction on July 20, 1966, and that he had received notice from garnishee dated July 9. The notice showed that a copy had been sent to plaintiffs. Gaynor stated that he had been concerned about the possible existence of an attorneys' lien and the fact that he had not been in touch with the judgment-creditor's attorney. He decided, however, that since Westfall had told him that the attorneys lacked authority, his best course was to file the satisfaction and let the attorneys challenge it. Gaynor testified that, at the time Westfall executed the satisfaction, he admonished Westfall as to the seriousness of the charge he was making against an attorney. Westfall allegedly replied that he understood but that the lawyer did not have authority to confess the judgment. (Westfall died prior to trial and did not testify.)

Gaynor on cross-examination testified that he was told by Westfall that plaintiffs represented Shalcross in other matters. Westfall also told Gaynor that the note originally had been delivered to plaintiffs for their use in representing Wilson in a criminal matter. Gaynor stated that he believed that the assignment of the note to Shalcross was designed to avoid the rule that a party being accommodated cannot sue on a note. One reason Gaynor did not call plaintiffs to inquire about their authority to confess judgment was because he could not conceive that plaintiffs would admit lack of authority.

Gale Marcus, called as an adverse witness, testified that, in addition to the note in question, Wilson had signed another note in favor of plaintiffs for $15,000 in June, 1966. Marcus also testified that Westfall had delivered the note and conveyed Wilson's instructions to collect on it.

At trial plaintiffs introduced into evidence a written statement made by Wilson in the presence of several witnesses. In this document Wilson stated that Vitacco had not only signed the note as an accommodation party but also that to the best of his knowledge Vitacco had received no benefits from the loan.

■■ The essential elements that must be proved for a party to prevail in an action for unlawful interference with contractual relations are: (1)

the existence of a valid contract; (2) knowledge by defendants of the existence of the contract; (3) inducement by the defendants to the other party to breach his contract; and (4) damages as a result of the inducement. (*Zamouski v. Gerrard* (1971), 1 Ill.App.3d 890, 275 N.E.2d 429.) A finding of malice does not depend upon the traditional concept of ill-will but rather upon the determination that a wrongful act was done intentionally and without just cause. *Worrick v. Flora* (1971), 133 Ill. App.2d 755, 272 N.E.2d 708.

At the conclusion of the evidence, the trial court found that plaintiffs had been damaged, but found that plaintiffs had not established the other three elements necessary to prove the tort of interference with contractual relations. The court questioned the validity of the contract on the ground that plaintiffs knew or should have known that the note was a sham, and that Wilson was attempting to keep a note in commerce which in fact had been retired. The trial court also found that plaintiffs failed to establish that defendants had knowledge of the agreement giving plaintiffs an interest in the proceeds of the note. The court believed that plaintiffs easily could have established knowledge if they had protected their interest by taking an endorsement on the note, by assigning the judgments to themselves, or by filing an attorneys' lien. On the question of inducement the court found that Westfall had been induced, but by Mercurio rather than by defendants.

Plaintiffs attempted to prove that Wilson and Vitacco were co-makers of a note payable to the Hartford Plaza Bank. They contended that any money given to Hartford by Wilson had for its purpose the negotiation of the note to Shalcross and not the extinguishment of the debt evidenced by the note. Hence, plaintiffs argued that the contract existing between them and Salcross to sue on the note was fully valid at the time of defendants' alleged interference. However, the trial court found that an accommodation relationship existed between Vitacco and Wilson, and that Vitacco was merely an accommodation maker.

■■■ An accommodation maker is a party who signs an instrument in any capacity for the purpose of lending his name to it. (Ill. Rev. Stat. 1965, ch. 26, par. 3—415(1).) Once the instrument is paid, the liability of the accommodation party is discharged. (Ill. Rev. Stat. 1965, ch. 26, par. 3—601 (1) (a) and 3—603.) The evidence in this case fully supports the conclusion reached by the trier of fact than an accommodation relationship did exist, that the note was paid off by Wilson, and that any contract which may have existed to sue Vitacco on the note, was, therefore, unenforceable.

■■■ Plaintiffs maintain that the introduction of any evidence regarding the existence of an accommodation relationship was error because

it constituted a prohibited collateral attack on the prior judgment. This argument overlooks the fact that it was plaintiffs who introduced the written statement of Wilson in which the latter stated that Vitacco was merely an accommodation party and received no proceeds of the loan. Plaintiffs contend that their purpose in introducing the document was to have only part of it admitted. However, the record reveals that plaintiffs belatedly sought to limit the document's purpose only after it had been received in evidence without objection by defendants. The attempted restriction came too late; the statement became general evidence, and it was permissible for the trier of fact to draw any reasonable inference for any legitimate purpose. (*Dill v. Widman* (1953), 413 Ill. 448, 109 N.E.2d 765.) Moreover, an exception to the general rule allowing only a direct attack on a judgment exists when a party seeks to prove that a judgment was procured through fraud or collusion. (*Shapiro v. DiGuilio* (1968), 95 Ill.App.2d 184, 237 N.E.2d 771.) Fraud vitiates every transaction, even when robed in a confessed judgment. (*Hughes v. First Acceptance Corp.* (1931), 260 Ill.App. 176.) Since the trial court had substantial evidence which indicated a sham had been perpetrated in keeping a retired note in commerce and in using it as a vehicle for obtaining a confessed judgment, the court correctly permitted defendants to introduce evidence that Vitacco was an accommodation maker of the note.

Plaintiffs next contend that the trial court erred in permitting defendants to introduce evidence of payment by Wilson and the existence of an accommodation relationship because they were affirmative defenses not raised in defendants' pleadings.

■■ We agree with the trial court's ruling that the "payment" required to be pleaded as an affirmative defense under section 43(4) of the Civil Practice Act would be that defense utilized in an original suit on the note, not a suit of the nature before us. Moreover, no surprise to plaintiffs can be attributed through the introduction of such evidence at trial. Plaintiffs had averred in their complaint that Wilson had paid the note and defendants had replied that Vitacco's obligation was extinguished.

Plaintiffs' proof was also deficient regarding defendants' knowledge of the alleged contract. The evidence revealed that defendants had been informed by the only two officers of Shalcross that they had not authorized plaintiffs to file suit on the note. And no interest of plaintiffs had been noted on the instrument in the form of endorsement or the filing of an attorneys' lien.

Our examination of the record not only supports the trial court's determination that there was no unlawful interference with a contract but also its holding that plaintiffs did not prove the existence of fraudulent or conspiratorial activities on the part of defendants. However unwise

defense counsel's conduct may have been in dealing with an officer of Shalcross without informing plaintiffs, the conduct was not tortious.

Plaintiffs next argue that defendants improperly destroyed their valid attorneys' lien rights by agreeing to the satisfaction executed by Westfall without plaintiffs' knowledge.

■■ The authority for Westfall's actions has never been questioned by any one in these proceedings. No one has attempted to refute his signature on the satisfaction. Plaintiffs have never claimed that Westfall was the victim of over-reaching by any of the defendants. Furthermore, an attorney has no standing to complain about the manner in which his client has dismissed or otherwise satisfied a claim. *Anastos v. O'Brien* (1972), 3 Ill.App.3d 1015, 279 N.E.2d 759; *Paul v. Stewart* (1944), 323 Ill.App. 527, 56 N.E.2d 141 (abstract).

No equitable assignment was created based upon the contingency fee schedule. Since the case of *Cameron v. Boeger* (1902), 200 Ill. 84, 65 N.E. 690, the courts have uniformly held that a clear distinction exists between an actual assignment of a part of a debt, claim, or fund and a mere promise or agreement to pay a part of such debt, claim, or fund when collected or recovered. The arrangement here was merely contingent upon a recovery and hence constituted a mere promise.

■■ An attorneys' lien did not attach based upon the alleged contract. The Attorney's Lien Act (Ill. Rev. Stat. 1957, ch. 13, par. 14) merely created a certain procedure whereby an attorney could safeguard and enforce his right to a fee based upon the proceeds obtained as a result of the litigation or settlement. But neither a contingency fee schedule nor the attorney's lien it produces gives a lawyer

> "* * * any interest in a litigation other than the proceeds, [hence] we have held that a litigant, despite a contingent fee contract * * * can dismiss his lawsuit and the attorney has no cause of action against the defendant absent proof of settlement with the client * * *. Further, even though he has an attorney's lien, a lawyer cannot compel continuation of a litigation so that his lien rights can be protected."

(*Anastos v. O'Brien, supra,* at pp. 1020-1021.) Therefore, the failure of plaintiffs' client to receive any proceeds from the prior judgment meant the lien was incapable of attaching to anything. *Mason v. Papadopulos* (1956), 12 Ill.App.2d 140, 138 N.E.2d 821.

Plaintiffs' final contention is that the trial court erred in denying their motion to file an amended complaint to conform to the proof adduced at trial. Although we are cognizant of the liberal policy established in allowing such amendments, their materiality to the evidence must be clear and apparent. (*McCartney v. McCartney* (1956), 8 Ill.2d 494, 134

N.E.2d 789.) The proposed amended complaint in the present case contained allegations which were argumentative and unfounded based upon the evidence received at trial. Thus, the denial of the motion was proper.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

McGLOON and MEJDA, JJ., concur.